Kibbe *against* Antram.

A person ordained a deacon, according to the forms and usages of the *Methodist Episcopal church*, and commissioned, by the bishop of that church, to preach, and to administer the ordinances of marriage, baptism and burial of the dead, is an *ordained minister*, within the late marriage act.

Where a person so ordained and commissioned, resided constantly, for many years, in the town of *E.* in this state, having the charge of the *Methodist* church therein; preaching to them, at their request; and statedly exercising all the powers and priviliges authorized by his commission; and they providing for his support, by voluntary contributions; during which [period, he owned and considered them as his church, and they owned and considered him as their minister and local deacon; it was held, that such person was *settled in the work of the ministry,* within the late marriage act.

This was an action of trespass, for criminal conversation with the plaintiff's wife.

The cause was tried at *Tolland, December* term, 1820, before *Bristol,* J.

On the trial, the plaintiff offered evidence to prove, that the plaintiff and his wife were joined in marriage, at *Ellington,* on the 3d of *September,* 1812, by *Amasa Dimick,* an ordained minister and deacon of the *Methodist Episcopal* church. To the admission of this evidence the defendant objected, on the ground that Mr. *Dimick,* by the laws of this state, was not authorized to celebrate marriage. To shew that Mr. *Dimick* had such authority, the plaintiff adduced evidence to prove, that he, Mr. *Dimick,* according to the discipline and constitution of the *Methodist Episcopal* church, was duly nominated, by the *Methodist Episcopal* church in *Ellington,* to *Francis Asbury,* bishop of the *Methodist* church in the *United States,* and was, by him, duly ordained as a deacon of the *Methodist Episcopal* church; from whom he received a commission, in the following words: "Know all men, by these presents, that I, *Francis Asbury,* bishop of the *Methodist Episcopal* church in *America,* under the protection of Almighty God, and with a single eye to his glory, by the imposition of my hand, and prayer, have, this day, set apart *Amasa Dimick* for the office of a deacon, in the said *Methodist Episcopal* church, a man whom I judge to be well qualified for that work; and do hereby recommend him to all whom it may concern, as a proper person to administer the ordinance of baptism, marriage and the burial of the dead, in the absence of an elder, and to feed

the flock of *Christ*, so long, as his spirit and practice are such as become the gospel of Christ, and he continueth to hold fast the form of sound words, according to the established doctrines of the gospel.    In testimony whereof, I have hereunto set my hand and seal, this third day of *June*, in the year of our Lord, one thousand eight hundred and two.

*Francis Asbury.*    [L. S.]

For the same purpose, the plaintiff also adduced evidence to prove, that Mr. *Dimick*, immediately after his ordination, returned to the *Methodist* church and society at *Ellington*, where he constantly resided until the commencement of the plaintiff's action, and at their request, statedly preached to the people, exercising all the powers and privileges authorized by his commission ; that such church, during the whole of this period, had, by voluntary contributions, provided for his support, as their minister and local deacon ; and that he owned and considered such church as his church, and they owned and considered him as their minister and local deacon.

The defendant claimed, that Mr. *Dimick's* commission gave him no charge over any particular people, but equal authority and power in all places.   The defendant further claimed, and offered evidence to shew, that Mr. *Dimick* had not, during the period above-mentioned, the exclusive charge of the church in *Ellington;* but that other stationary clergy of the *Methodist* persuasion had, at various times, preached to the church in *Ellington,* and had exercised in that church their priviliges and authority, according to the constitution of the *Methodist* church.

The judge decided, that the evidence of the marriage, offered by the plaintiff, was admissible, although Mr. *Dimick* was not ordained over any particular people ; and that, even if the marriage was invalid, it was confirmed, for the purpose of this case, by the act of the legislature, passed in *May*, 1820.

No evidence of force being given, other than an adulterous intercourse between the defendant and the plaintiff's wife ; the defendant prayed the judge to instruct the jury, that proof of such intercourse would not support the plaintiff's action ; but that it onght to have been an action of trespass on the the case.   But the judge refused so to instruct the jury.

The plaintiff having obtained a verdict, the defendant moved for a new trial, on the ground that the decision of the judge

*Tolland,*
*July,*
*1821.*

*Kibbe*
*v.*
*Antram.*

admitting the plaintiff's evidence, and his direction to the jury, were erroneous.

*Goddard* and *T. S. Williams*, in support of the motion contended, 1. That trespass will not lie, in this case ; there being no force other than the adulterous intercourse. The injury is *consequential*, and not direct or immediate. An action on the case is, therefore, the proper remedy. 1 *Chitt. Plead.* 123. 1 *Tidd's Prac.* 6. n. *Bennett* v. *Allcott*, 2 *Term Rep.* 167. per *Buller*, J. *Weedon* v. *Timbrell*, 5 *Term Rep.* 361. per *Grose*, J. *Macfadzen* v. *Olivant*, 6 *East*, 387. and *Cooke* v. *Sayer* and *Parker* v. *Ironfield* therein cited.

2. That the evidence adduced by the plaintiff was inadmissible to prove a valid marriage. To constitute a valid marriage under the statute, *tit.* 105. c. *t.* s. *2.* (ed. 1808.) three requisites are indispensable ; first, the act of some third person, a magistrate or a minister, to join the parties in marriage ; secondly, that such person, if a minister, be *ordained* ; and thirdly, that he be *settled* in the work of the ministry.

In the first place, Mr. *Dimick* was not an *ordained minister*, within the meaning of the statute. Marriage has always been considered, in this state, as a *civil contract ;* and, originally, none but civil magistrates were authorized to celebrate it. By an act passed in 1694, " the ordained ministers of the several plantations" were invested with that authority. This provision was afterwards transferred to the statute in question. Could the General Assembly, in 1694, have meant to include in the phrase used by them, a person, commissioned by an individual, as a *deacon*, with authority to preach and administer certain ordinances, *any where ?* Did not ordination, at that time, imply, *ex vi termini*, plenary powers as a minister of the gospel, and a certain *relation* subsisting between such minister and the people of his charge ?

Secondly, Mr. *Dimick* was not *settled* in the work of the ministry, at the time of the marriage in question. The mode of settling a minister is prescribed by statute. *Tit.* 114. *p.* 518. (ed. 1808.) It can take place only in consequence of a major vote of the inhabitants of the society, having the requisite qualifications, present at a meeting legally warned. But Mr. *Dimick* was not settled in the ministry at *Ellington*, in any manner. He was not placed there, by his bishop. He had no local charge over that people. There was no vote or act of theirs, recognizing him as their minister. He was at liber-

ty to leave them at pleasure.   In short, there was nothing to distinguish his situation from that of an itinerant preacher, except the bare fact of his continued residence at *Ellington.* The contributions made for his support were voluntary, and such as may be, and constantly are, made in behalf of itinerant preachers : they do not tend to shew the extent of his powers, or the nature of the relation subsisting between him and those to whom he preached.   A missionary may have been *ordained;* and he may continue to reside in one place, and to preach to one people, for a long time ; but he is not *settled* there as a minister, until a particular relation is created between him and his people.   *Roberts* v. *The State Treasurer,* 2 *Root* 381.

3. That the act of *May,* 1820, so far as it purports to operate upon the marriage in question, is not valid ; it being an attempt, by the legislature, to exercise *judicial* powers.   It is moreover, a *retrospective* law ; and as such, may be declared void, on principles of universal jurisprudence, though not repugnant to the letter of the constitution of this state, or of the *United States.   Dash* v. *Van Kleeck,* 7 *Johns. Rep.* 477. 6 *Bac. Abr.* 370. *Gwil.* ed.

C. *Willey* and *Kibbe,* contra. contended, 1. That trespass lies for criminal conversation.   3 *Bla. Comm.* 139. [On this point the Court stopped the counsel.]

2. That the marriage in question was originally valid.

First, Mr. *Dimick* was *ordained.*   The statute prescribes no form of ordination.   If a person is ordained according to the form of the denomination of worshippers, to which he belongs, the statute is satisfied.   The case shews, that Mr. *Dimick* was so ordained.

Secondly, Mr. *Dimick* was a *minister.*   The powers and duties assigned him, by his commission, prove him to be such. The name of his office, whether we regard its etymological meaning, or its ordinary acceptation among this denomination of *Christians,* is synonymous with minister.

Thirdly, Mr. *Dimick* was *settled* in the work of the ministry at *Ellington.*   The meaning of the term *settled,* is to be ascertained in the same way as of the term ordained.   If this man was settled, in the *Methodist* sense of the term, he was settled, in the sense contemplated by the statute.   An *express contract* between the minister and his people, is not necessary to constitute a settlement.   Nor is a *salary* necessary for this pur-

pose. In this case, however, there was, at least, an *implied* contract ; for he preached to the people, and performed other services, *at their request.* Superadded to this, there was permanent residence, on his part ; and a competent provision for his support, on their part. He had in fact, and, by the constitution of the *Methodist* church, was regarded as having, a local charge. He was their minister ; and they were his church and people. He was, in no sense, an *itinerant* preacher.

3. That if the marriage was originally invalid, it was confirmed by the act of *May*, 1820. It is not denied, that the words of the act extend to this case. (*a*) Mr. *Dimick* was clearly " qualified to celebrate marriages, according to the forms and usages" of the *Methodists.* Will the court, then, declare this act to be void ? It is not prohibited by the constitution either of this state, or of the *United States.* It is not an *ex post facto* law ; nor is it a law impairing the obligation of contracts ; nor does it profess to give a construction to a former law. The defendant, then, must take the broad ground, that the legislature, upon general principles, have no right to pass a law having a retrospective operation. This ground is not tenable. *Calder* v. *Bull*, 3 *Dall.* 386. Our legislature, through every period of its history, has been in the habit of passing confirmatory acts ; and such acts have, invariably, been carried into effect. This was known to the framers of our constitution ; who did not think proper to prohibit, or, in any manner, guard against, the exercise of such a power.

Hosmer, Ch. J. The court decline, on this motion for a new trial, to express any opinion, relative to the legal propriety of the plaintiff's action. The question arises on the face of the record, and is the proper subject of a writ of error.

The result to which the court have come, renders it unnecessary to decide the objections made, respecting the constitutionality of the late act, confirmatory of marriages, when celebrated by an ordained minister, according to the forms

(*a*) The 6th section of the act, entitled, " An act for the due and orderly celebrating of Marriages," passed *May*, 1820, is in these words : " That all marriages, which have heretofore been performed and celebrated, in this state, by a magistrate, justice of the peace, or a minister ordained, or qualified and empowered to celebrate marriages according to the forms and usages of any religious society or denomination, are hereby declared to be good and valid, to all intents and purposes whatever ; any law, custom or usage to the contrary notwithstanding."

and usages of any religious society or denomination. Wheth- *Tolland,* *July,* *18 1.* er the marriage between *Kibbe* and wife was legally had, ac- cording to the existing law, is the sole point of our determin- ation.

*Kibbe v. Antram.*

By the second section of the act " for the regulating and or- derly celebrating of marriages" (*Stat. p.* 478. ed. 1808.,) it is enacted, " That no person whatsoever in this state, other than a magistrate or justice of the peace, and that within his own county or jurisdiction, *or ordained minister, and that only in the county where he dwells, and during the time he contin- ues settled in the work of the ministry, shall join any persons in marriage.*" The plaintiff offered to prove, that he was mar- ried at *Ellington,* by *Amasa Dimick,* who had been duly or- dained a deacon, according to the forms and usages of the *Methodist Episcopal* church ; and that, at the time of celebra- ting the marriage, he had the charge and oversight of the *Methodist* church and society in the above town, and resided there. The testimony was admitted ; and to test the legali- ty of such admission, is the object of the present motion.

Two questions are presented for the decision of the court ; that is, whether Mr. *Dimick* was an *ordained minister* within the meaning of the statute ; and whether he was settled at *Ellington,* in the work of the ministry.

To *ordain,* according to the etymology and general use of the term, signifies *to appoint, to institute, to clothe with authori- ty.* When the word is applied to a clergyman, it means, that he has been invested with ministerial functions, or sacer- dotal power. In this comprehensive use of the term, *ordain- ed,* there is no question that Mr. *Dimick* was embraced, at the celebration of the plaintiff's marriage. Ordination, properly speaking, is restrained to the investiture of author- ty ; and it is entirely owing to want of due discrimination, that it ever has been carried farther. In a state, where the person ordained, is invested with spiritual authority, and at the same time, receives the charge of a particular church and congregation, it is not wonderful, that all the rights of the clergyman, on the visible exercise of which he contempo- raneously enters, should inaccurately be referred to his or- dination. But, in reality, they are derived from different sources. His authority to preach the gospel and celebrate its ordinances, results from the ordination of the clergy ; but the right to perform his ministerial functions in a par- ticular church, depends on compact, and implies the assent,

of the persons over whom they are exercised. Hence, it follows, that the ordination of a clergyman remains, after his separation from a church of which he once had the charge; and his spiritual authority continues, although he is not settled over a particular congregation. In the *Episcopal* church, the conferring on a person the holy orders of deacon or priest, is the invariable mode of ordination. To become a parson, invested with full possession of all the rights of a parochial church, is quite a different consideration. He must be *instituted*, which is an investiture of the spiritual part of the benefice; and after this follows *induction*, which confers on him the temporalities of the church. But he is ordained deacon and priest antecedently; and is denominated an ordained minister. 1 *Bla. Comm.* 388. In the *Methodist* church, their deacons and priests have conferred on them, by a general ordination, the investment of their ministerial functions, and are never, by that act, placed over a particular church. The statute harmonizes, entirely, with the meaning I have assigned to the term *ordained*; as it discriminates between the *ordained minister*, and his being *settled in the work of the ministry*; requiring both to confer on him the authority of celebrating marriages; and by undoubted construction, considering the former as not inclusive of the latter. On the contrary, if there can be no ordained minister, within the statute, unless he is, by the act of ordination, and the compact of a parish, placed contemporaneously over a particular church, invested with full authority; then, the *Episcopalians*, the *Methodists*, and all other religious sects, who confer holy orders separately from a specific charge over a church, are interdicted the celebration of marriages. It is a fact well known, that the ministers of the *Episcopal* church, for more than an half century, have been in the habit of marrying persons, with a universal acquiescence in their unquestionable right to do it. On the wh le, I entertain not a particle of doubt, that the plaintiff was married, by by an ordained minister, within the plain meaning of the law.

The remaining question is, whether Mr. *Dimick* was *settled* at *Ellington* in the work of the ministry. By *a settled minister*, in this case, I understand a person authorized to perform ministerial functions, and particularly, the celebration of marriage; resident in the county where he performs them; and who has the charge of a particular church and

congregation. He must not be an itinerant, but a local preacher.

Tolland,
July,
1821.

Kibbe
*v.*
Antram.

Assuming as true the testimony offered and admitted, Mr. *Dimick* was authorized, by the rules of the *Methodist* church, to preach; to administer the ordinances of baptism and marriage; to bury the dead; and generally, to feed the flock of Christ.

He had a constant local residence in the town of *Ellington;* and the charge of the *Methodist* church and society in that place. On the request of the church, he preached to them from the time of his ordination to the date of the plaintiff's writ; during which time, they contributed, by voluntary contribution, for his support, *as their minister, and local preacher and deacon; and " he owned and considered the above church as being his church, and they owned and considered him as being their minister and local deacon;"* he, during all the time aforesaid, stately exercising all the powers and privileges authorized by his commission. What more can be said of any person, settled in any ecclesiastical society? That Mr. *Dimick* was compensated, by voluntary contribution, instead of a stated salary, is a feature of no importance in the case. Of as little materiality is it, that a constant exercise of his ministerial functions, with the concurrence of the church and society, was offered in evidence, instead of a definite written agreement. They are only different *media,* through which the same fact is established, that is, that he contracted to be the minister of the church at *Ellington;* and having superadded to this the performance of his engagement, that he was, by compact, and fulfilment of it, the settled minister of the place. The testimony offered was rightly admitted; and a new trial I would not advise.

The other Judges were of the same opinion. BRAINARD, J. doubted, at first, whether the statute did not require a minister, qualified to join persons in marriage, to be *settled* according to the *Congregational* form; that being the only form known in the community, at the time the statute was passed. But, on further consideration, he became satisfied, that the term *settled* being used in the statute without restriction, though applicable, at that time, to one form only, because it was then the only subject, became equally applicable to other forms, when they were subsequently introduced.

New trial not to be granted.