EDWARD BUDINGTON, ADMINISTRATOR, *vs.* ALFRED S. MUNSON, EXECUTOR.

In all civil actions reputation and cohabitation are admissible evidence of marriage.

Lapse of time, in analogy to the statute of limitations, is a bar to proceedings in equity.

Where by the provisions of a jointure and a will one third of the estate of a testator was given to his widow for life, with a provision that if she married her estate should cease, and there was also given her a power of appointment in respect to the reversion of such one third among the children of the testator, and she, immediately upon the settlement of the estate, executed the power of appointment in favor of one of the children of the testator, and conveyed for a considerable sum her life estate to the same child to whom the appointment was made, and two years afterwards married, and the deed of her life estate was not recorded until five years after it was executed nor until three years after the widow had again married—held, that these facts alone, all the parties to the transaction and then in interest being dead and no objections having been made by any of them during their lives, did not furnish satisfactory evidence of a corrupt appointment.

BILL in equity, brought by the petitioner as administrator, with the will annexed, of the estate of Elijah Thompson deceased, against the defendant as executor of Grace Jacocks deceased, praying that one hundred shares of the stock of the New Haven Bank standing in the name of the said Grace, and claimed to belong to her estate, might be transferred to the petitioner as such administrator, and an account be rendered of dividends received on the stock. The case was brought to the superior court for New Haven county.

The facts, which were found by a committee, were substantially as follows:—

On the 27th of May, 1812, Elijah Thompson and Huldah Thompson contemplated an intermarriage, and in view thereof entered into the following marriage contract.

" This indenture made by Elijah Thompson of New Haven on the one part, and Huldah Thompson of said New Haven on the other part, witnesseth : That whereas, the said Elijah and said Huldah have agreed to enter into the marriage contract with each other, and the said Elijah is desirous of mak-

ing ample provision for the support and maintenance of the said Huldah;—now the said Elijah on his part covenants to furnish her with all the necessaries and comforts of life during the time she shall remain his wife, and agrees that she shall have the sole and exclusive interest in and control over all the estate, both real and personal, of which she is now possessed, and shall receive to herself all the rents and profits growing out of the same, and shall dispose of the same for such purposes and in such manner as to her shall seem proper during the whole time she shall remain his wife. And the said Elijah further covenants and agrees with the said Huldah, that in case she shall outlive him then she shall have one-third part of all the estate both real and personal of which he shall die possessed, or an equivalent thereto in such part of his estate as shall be most secure and easiest to manage, for her to use, occupy and improve, reserving to herself and for her own use the rents and profits growing out of the same during the time she shall remain his widow ; and that the said Huldah shall have the sole right, and the said Elijah fully authorizes her, to give, convey or bequeath said third part of his estate or said equivalent to such of his heirs at law as to her shall seem meet and proper ; and it is expressly understood that upon the said Huldah's ceasing to be the widow of the said Elijah, said portion provided for said Huldah shall go to the heirs of said Elijah, or to such of them and in such portions as she shall designate ; and it is further understood that in case of disagreement with the heirs, said third part or said equivalent shall be ascertained and set out to said Huldah by three judicious, disinterested freeholders to be appointed by the judge of probate for New Haven district for the time being. And the said Elijah further covenants that he will not in his life time make any disposition of his property by deed of gift whereby the said Huldah shall be cut off from the foregoing provision or any part thereof. And the said Huldah on her part covenants and agrees with the said Elijah to accept of the foregoing provisions in lieu of her dower in his estate, and on receiving said one-third part of said estate or said equivalent she covenants and

agrees to relinquish all further claim or right of dower in or to said estate, and on ceasing to be the widow of said Elijah she covenants and agrees that the whole of said portion to be set to her shall be disposed of among the heirs-at-law of said Elijah."

After the execution of this contract the said Elijah and Huldah were married, and afterwards, about the 1st of October, 1825, the said Elijah died at said New Haven, leaving a will by which he gave to said Huldah, who survived him, one-third part of his estate both real and personal so long as she should continue his widow, agreeably to the terms and conditions expressed in the marriage contract; and under the will and pursuant to the provisions of the marriage contract a portion of his estate was set out and distributed to her, of which portion a part consisted of the shares of stock of the New Haven Bank described in the petition.

Afterwards, on the 10th of June, 1826, the said Huldah executed to Grace Thompson, one of the children and heirs of Elijah Thompson, a quit-claim deed of all her interest in the estate, for the consideration expressed therein of $9,000, which deed was recorded in the land records of the town of New Haven on the 16th day of November, 1831. At the same time that this deed was executed the said Huldah executed a power of appointment to the said Grace, under the marriage contract and will of the said Elijah, giving to her, and appointing her to receive, as one of the heirs of the said Elijah, all the third part of the estate set to her the said Huldah, which deed was recorded in the land records of the town of New Haven on the 13th day of July, 1826. The consideration expressed in this deed was the love and affection which the said Huldah bore to the said Grace, and the love and affection which the said Elijah had borne to her.

The committee found that these deeds were not separate transactions, but each was intended to be, and was, part of one transaction between the said Huldah and Grace, and the subject matter of both deeds was the portion of said Elijah's estate coming to said Huldah in virtue of the ante-nuptial contract and will. There was no direct evidence as to the

time of delivery of these deeds by said Huldah to said Grace, but the committee found that such delivery was made; and from the fact that the record of one of the deeds was on the 13th day of July, 1826, and the further fact that the making and execution of both deeds was one transaction, the committee found that the delivery of both was at the same time, and was on or before July 13th, 1826. There was no evidence of the consideration of the deeds but what appeared upon their face, from which the committee found that the considerations expressed in both, viz., $9,000 in the case of the quit-claim deed, and love and affection in the other, were the considerations moving the said Huldah in the entire transaction.

By the will of Elijah Thompson Æneas Munson and Elisha Munson were made executors. The latter of these died in 1841 and the former in 1852. The plaintiff was appointed by the court of probate administrator de bonis non, with the will annexed, on the 16th day of February, 1865.

The committee further reported that the petitioner, to prove that said Huldah married again after the death of said Elijah, offered the declaration of said Huldah, made during the year 1828, that she had lately contracted another marriage with one William Scovil, and other declarations of said Huldah at other times to the same effect; also the fact that said William Scovil and said Huldah lived together and conducted towards one another as husband and wife, claiming to be such; and also the reputation in the place where they lived in the state of New York, that they were so husband and wife; to the competency of which evidence the respondents objected, and the committee found that, if any of such evidence was competent to prove the marriage, the said Huldah did, some time in the year 1828, marry said William Scovil, and cease to be the widow of said Elijah; but if such evidence was incompetent for the purpose, that then such marriage was unproved. There was no evidence of anything clandestine or secret about such marriage if proven, or that said Huldah kept the same concealed from the heirs at law or relatives of said Elijah. The committee also found that, besides the said Grace, there were and still are other children

and heirs at law of said Elijah, or lawful issue of such ; and that one of these children was a daughter named Mehitabel, who married Asa Budington, May 13th, 1812, and died April 17, 1834, leaving three children, one of whom is the petitioner.

Upon these facts the case was reserved for the advice of this court.

*Blackman* and *Doolittle*, with whom was *Morris*, for the petitioner.

1. The evidence offered to prove the marriage of Huldah Thompson and William Scovil was all admissible. *Hammick* v. *Bronson*, 5 Day, 290 ; *State* v. *Roswell*, 6 Conn., 446 ; *Newburyport* v. *Boothbay*, 9 Mass., 414 ; 2 Greenl. Ev., §§ 461, 462.

2. By the terms of the ante-nuptial contract and the will Huldah had the use of the property during her widowhood, with the power of distributing the same among the heirs of Elijah as might to her seem best. This power was undoubtedly hers in order to secure for her proper care and attention from the children of Elijah. No intention is manifested of granting her the means of making money out of a simple act of discretion. The exercising of this discretion in behalf of Grace for pay is a fraud upon the rest of the heirs. If a man having power to appoint to A or B, appoint to A in consideration of a sum paid by him, equity will relieve against the fraud. 2 Sugden on Powers, 199, 200. If a parent having a power to appoint the estate unto any of his children exclusively of the others, appoint to one upon a bargain made beforehand with that child that he shall pay a consideration for it, equity will relieve against this appointment. Id., 201. In *Danbury* v. *Cockburn*, there cited, where the power was to appoint to all or such one or more of the children as the father, the settler, should choose, and in default of appointment the fund was limited to the only son, his executors, &c., and the father appointed a large sum to one of his daughters, upon a bargain beforehand with her for his benefit, it was held by Sir William Grant that the appointment was void *in*

*toto*. The date of the two deeds, taken in connection with the finding that the making of both was intended to be and was one transaction, with the further finding that the considerations expressed in both were the considerations moving the said Huldah in the entire transaction, show that the transaction was a fraud upon the rest of the heirs. The appointment to Grace is also invalid in consequence of each of the heirs not having a share. When the distribution is left to discretion, without any prescribed rule as to such of the children as the trustee should think proper, he may appoint to one only; but if the words be "among" the children as he should think proper, each must have a share. 4 Kent Com., 343; 2 Sugden on Powers, 178. It is true that in the ante-nuptial contract Elijah authorizes Huldah to convey to such of his heirs as may seem meet and proper, but Huldah covenants in return that the whole of said portion shall be disposed of among the heirs of Elijah.

3. The statute of limitations is no answer to the petitioner's claim. Grace took the property and held it until the marriage of Huldah lawfully. A demand was therefore necessary to perfect the right of action, and the statute can only run from such demand. Further, she was guilty of such fraud in the transaction that the benefit of the statute should be denied. The statute has no application to a proceeding in equity where the respondent has been guilty of fraud. *Phalen* v. *Clark*, 19 Conn., 421; 2 Story Eq. Jur., § 1521 *a*. The use of money to influence the appointment and the concealment of the transaction by the withholding the deed from record, stamp the transaction as a fraudulent one. Although, if the quit-claim deed had been put on record at the time, there might have been a presumption that the heirs of Elijah were cognizant of the whole matter, yet there can be no such presumption where the deed is fraudulently withheld from record for nearly six years. If the statute begins to run from the time the fraud was discovered, the respondents to set up this defense must show affirmatively that six years have elapsed since that time. Again, the statute can only run from the time when there has been a party in existence able

and qualified to prosecute a suit. Angell on Limitations, Ch. 7. The statute begins to run against a claim in favor of a deceased person's estate which accrued after that person's death, only from the time of proving the will or granting administration in this state. *Hobart* v. *Connecticut Turnpike Co.*, 15 Conn., 145. The executors named in the will of Elijah Thompson administered, and only had power to administer, upon the estate set forth in the will. The will does not contemplate the fact of a non-appointment or an invalid appointment. It gives the executors instructions how to dispose of the whole property, and when that disposition has been made their powers ceased. Upon the marriage of Huldah the third of which she and Grace had been in the enjoyment became intestate property, and the executors of the will had no power over it, and certainly no power to make demand or to commence a suit. The statute of limitations can only run from the time that the petitioner was qualified as administrator de bonis non, which was not till the year 1865, as he is the only person who was ever legally entitled to demand the property from Grace, or to institute proceedings against her.

4. The claim of a want of due diligence is the only remaining answer to the petition, and the reasons urged upon the last point apply equally to it. This defense is properly applicable only where there is no statute of limitations governing the case. After a bar has been fixed by statute to the legal remedy, the remedy in a court of equity has in analogous cases been limited to the same period. If the statute of limitations is applicable to this case, as claimed by the respondent, then the period fixed by it is the only measure of due diligence. 2 Story Eq. Jur., § 1520. The petitioner and those he represents have not been guilty of a want of due diligence in any particular.

*Beach* and *C. R. Ingersoll*, for the respondent.

BUTLER, J. We have no difficulty in respect to the evidence to prove the marriage of Huldah Thompson, and that

fact is sufficiently proved.    Nevertheless the bill must be dismissed.    The other facts found are too meagre and the claim too stale.

Although the circumstances attending the transaction are calculated to excite a suspicion, they do not warrant a finding that the appointment of the reversion to Grace was induced by the purchase of the life estate, or that either were made in contemplation of marriage by Huldah Thompson.

Elijah Thompson died in October, 1825.    Eight months afterwards, and presumptively as soon as his estate was settled, the deeds in question were executed.    That which made the appointment to Grace was immediately recorded.    The other was not recorded until 1831.    The committee has found that they constituted one transaction; and the reason why the deed of the estate during widowhood was not also recorded is not found.    It may have been accidental, and concealment can not be inferred from the fact alone.    Those circumstances will not warrant a finding that the deed of appointment was induced by the purchase of the life estate, and there are no other facts which will.

On the other hand there are many circumstances which go far to rebut a suspicion, even, that anything improper or unjust was intended or done.

The marriage of Huldah took place two years afterwards, and there is nothing whatever to indicate that it was contemplated when the deeds were executed; and, if not, it is not easy to perceive what motive Huldah could have had to make an improper appointment.

Again, although the deed of the life interest was not recorded until 1831, there is no evidence that the whole transaction was not known to the executors and devisees of Elijah Thompson, and assented to, and approved by all of them. It does not appear what the value of the one-third part of the estate of Elijah Thompson was.    If large, it was a natural thing that the widow should accept a gross sum and release it, providing for herself a competence and relieving herself from care.

And if the circumstances were strongly indicative of a cor-

rupt appointment, we could not hold the petitioner entitled to relief. The deed was recorded in 1831, and the marriage took place in 1828. After the deed was recorded in 1831, all the facts were presumptively known to the parties in interest, and among · them to the father of the petitioner. If not assented to they were acquiesced in by him till his death, and by the petitioner thereafter ; a period sufficiently long to bar the claim on the ground of presumed acquiescence or in analogy to the statute of limitations.

The superior court must be advised to dismiss the bill.

In this opinion the other judges concurred.