Studwell v. Cooke.

———•◆•———

## WILLIAM A. STUDWELL *vs.* AUSTIN H. COOKE.

38  549
73  614

By the strict rules of law a tender of performance, as incident to the legal duty to perform, could not anciently be made after the day fixed for performance, and before suit brought.

A different rule was adopted early in this state, (*Tracy* v. *Strong*, 2 Conn., 659,) and a tender may be made here at any time after the breach, and before the commencement of the action.

Costs are not incident to the debt, or to the action until it is pending, and although expense may have been made preparatory to its commencement, the plaintiff has no right to demand costs for that reason, nor is the defendant obliged to tender them until they become thus incident by the commencement of the action, which in this state is the actual service of process on the defendant.

There is no equity in favor of a creditor to require a debtor to pay the expenses of proceedings taken for the institution of a suit, before its actual commencement, so strong as to prevail over the right of the debtor to make tender of the debt.

No right to costs by reason of an equity has ever been recognized by the common law, and a court of law cannot yield to such an equity, without a departure from principle.

From a review of the authorities in England and in this country, it appears that every attempt which has been made to induce courts of law to recognize such an equity, and to require payment of costs before suit pending, has failed.

Therefore, where in foreign attachment, after service on the garnishee, but before service on the defendant, the defendant tendered to the plaintiff the amount of the debt alone, without the costs of the suit, it was held that such tender was sufficient.

GENERAL ASSUMPSIT; appealed from the judgment of a justice of the peace to the Court of Common Pleas, and tried on the general issue closed to the court, (*Brewster, J.,*) with notice of tender.

Philip B. Lever, of Stamford, in Fairfield county, on the first day of March, 1871, was owing the defendant a certain amount, and on that day the plaintiff legally attached all the goods and effects of the defendant in the hands of Lever. On the third day of March, 1871, the defendant, learning of said attachment, made a tender to the plaintiff of the sum of five dollars, the amount of debt then due the plaintiff from the defendant, and did not tender to the plaintiff any amount for costs made in the suit previous to that time. On the fourth day of March, 1871, a copy of the original writ and process was left with the defendant by a sheriff's deputy, which was the only service on the defendant himself.

Upon these facts, the plaintiff claimed that the tender was insufficient, because it was made after service upon the garnishee, and did not cover the costs already made by such service upon the garnishee, in addition to the debt. And the defendant claimed that the tender was sufficient, because it was made before service upon the defendant himself. The court held that the tender was sufficient, and rendered judgment for the defendant.

The plaintiff moved for a new trial.

*Olmstead* and *Curtis*, in support of the motion.

*Child* and *Fessenden*, contra.

BUTLER, C. J. The right to make tender of performance, as incident to the legal duty to perform, is as old, as absolute and as well settled as any principle of the law. By the strict rules of the law it could not anciently be made after the day fixed for performance, and before suit brought, and such has been the rule in some of our sister states until a recent period, and until changed by statute. A different rule was adopted early in this state, (*Tracy* v. *Strong*, 2 Conn., 659,) and a

tender may be made here at any time after the breach, and before the commencement of the action.

Where the tender is made before the commencement of the action, no costs need be tendered. This rule, so far as I can learn, is universal. Costs are not incident to the debt, or to the action until it is pending, and then only by force of statute, and although expense may have been made preparatory to its commencement, the plaintiff has no right to demand costs for that reason, nor is the defendant obliged to tender them until they become thus incident.

Every state has necessarily a rule which determines the stage in legal proceedings which shall be deemed a commencement of the action. In some of the states the rule is established by statute, in others by judicial decision. In this state it is fixed by decisions of this court, and is the actual service of process on the defendant—" that notice given to the defendant which makes him a party to the proceeding, and makes it incumbent on him to appear and answer to the cause, or run the risk of having a valid judgment rendered against him by default." *Sanford* v. *Dick*, 17 Conn., 216.

Such being the right of tender, without cost, before the commencement of suit, universally recognized, and such the rule in relation to the commencement of suit in this state, and this tender having been confessedly made before such commencement, we must hold the tender good unless the plaintiff has given us sufficient reason for departing from a rule which is as old as the law of tender.

On looking into his brief, we find two reasons assigned. The first is, that when an officer has so far commenced the service of a writ as to attach property, either by process of foreign attachment, or otherwise, the law requires that he shall complete the service for his own protection, and therefore the tender of the whole cost becomes necessary, and that, as the law requires the completion of the service, and never compels a party or an officer to do an act and then suffer for it, the costs made for the purpose of commencing the action should be tendered.

The import of this claim of the plaintiff is, that it is in-

equitable for a defendant by his default of performance to compel a plaintiff to institute a suit, or rather to be at the expense of commencing the institution of a suit, without requiring him to pay such expense, if he makes tender after it is incurred and before the commencement of the action. The second reason is, that the expenses so incurred have so attached themselves to the debt that a tender of the debt is insufficient.

The answer to these claims is, first, that the equity is not what at first blush it seems to be; second, that a court of law could not yield to the equity, if as strong as it is assumed to be, without a departure from principle; third, that in every known case where an attempt has been made to induce the courts to adopt the equity and require the tender of costs, the attempt has failed.

I. The equity is not what at first blush it seems to be. The right of a defendant to tender is an absolute and important right, which a court, without just cause, cannot abridge. The right of the plaintiff to secure his debt by an attachment lien is also an absolute right, but it is arbitrarily created for the benefit of the plaintiff, and it is at his option whether he will incur the expense or not; and if he prefers to be at the expense of acquiring such a lien, with the hazard of having the debt tendered before the expense has become incident to the litigation by action pending, he can exercise his option, but as a privilege, not as a common law right.

But admitting that it is equitable that he should have the costs so made to acquire a lien, it is also equitable that the defendant should enjoy his right of tender without other burden or expense. The rule we are asked to adopt would burden his right materially. It would throw upon him the burden of ascertaining, in many cases, before he could tender, whether process had been issued and served or not, and if issued and served, by whom issued, and what the expense of it, to what officer delivered, and how served, if served, and the expense of such service. And when he sought the necessary information, the creditor might refuse to give it, and would in many cases be tempted to do so. If the creditor referred the debtor

to his attorney, he may reside in another and distant town, and when sought may be absent, and if found may refuse to answer. If the debtor is so fortunate as to ascertain the name of the officer, he also might reside in another and distant town, and be absent when there sought, or be unwilling to suspend the service. Thus, the attempt to enforce the equity in favor of the plaintiffs might entail much trouble and expense, in a majority of cases, upon debtors, and in many cases where the suit may be wanton and oppressive. Then too, in cases where the amount of the debt should be in dispute, there would be the temptation to use some question arising out of the claim for costs to defeat the tender, and for officers and counsel to claim exorbitant charges, against which the debtor would have no redress by taxation. Thus, and in many other ways which might be suggested, the debtor might be subjected to trouble and expense which would practically destroy his right to tender before suit brought. Clearly the equity of the plaintiff is not what it is assumed to be, when carefully considered.

The reasons which have been urged why we should enforce the equity of the plaintiff do not reach to any right, but relate merely to the *strength* of the supposed *equity*. Their import is that the officer must complete his service, notwithstanding the tender, and that the plaintiff should be entitled to all the costs of completing the service. This claim would require the defendant to tender costs to be made in order to complete the service, and from the time that the writ was put in the hands of the officer, or as soon as any act was done by him. How are such future costs to be ascertained? How is the debtor to know what further service the officer proposes to make? What protection has he against oppressive charges? It is obvious, I think, that the counsel for the plaintiff have not sufficiently considered the consequences which would result from the adoption of the rule, and it is equally obvious that the reason urged is without force. A plaintiff to whom the debt has been tendered, and who has accepted it, may safely direct the service to be suspended, and the officer may

safely suspend it, for the tender is an implied request to that effect.

II. A court of law cannot yield to the assumed equity without a departure from principle. No *right* to costs by reason of an equity has ever been recognized by the common law. Costs are wholly the creature of statute, at law, and of discretion, in equity. Costs were first given to a defendant by the statute of 52 Henry III., chap. 6, in a particular case. Till then they were unknown to the law. Subsequently they were given to plaintiffs by the statute of Gloucester, (6 Edw. I., chap. 1, sec. 2,) in all cases where they should recover damages, and then and thereby became *incidents of an action.* Since then they have been given to parties litigant, and regulated in England and this country, by a very great number of special statutes, or by rules of court authorized by statute. In this state, in addition to the general statute, there are more than forty special ones giving or regulating them. The right to costs, therefore, in all cases at law, on interlocutory or final decisions, in England and this country, if it exists, rests on the provisions of some statute, or some rule of court authorized by statute, and where no statute has given a right none exists, and this doctrine has never been permanently departed from, and is universally recognized.

III. Every attempt to induce courts of law to adopt the rule insisted on, whether made in England or in this country, has failed.

The first attempt in England was made in the case of *Briggs* v. *Calverly* in the court of Kings Bench, in 1800. The plaintiff replied to a plea of tender, that before tender he had retained an attorney who had applied for a latitat, and that there was not time after the tender to countermand its issuance, and that he had been subjected to expense and cost, which the defendant should have tendered. Lord KENYON overruled the replication, saying that it was impossible to contend that the tender came too late, it having been made before the commencement of the suit. Such is the law of England to this day.

A like decision was made in Ireland in *Hepburn* v. *Plunkett,*

8 Irish Law Rep., 10, where to a plea of tender there was a replication that costs had been made before the tender and before the commencement of the action. The court, on demurrer to the replication, held the tender good. And such is the rule there.

The question also arose and was decided in this court in the case of *Holdridge* v. *Wells*, in 1801, (cited 4 Conn., 141.) Judge SWIFT thus speaks of it in his Digest which was published in 1822: "A question has arisen in this state, whether after a debtor has knowledge that a writ is in the hands of the sheriff, though not served, a tender of the debt without the cost of suit would be good, and it was decided that a debtor could never be bound to tender for cost till it had accrued by the actual service of a writ, and till that time he was bound to tender the amount of the debt only; that this was a plain rule by which debtors might govern their conduct, while a contrary rule would perplex them with uncertainty, and involve them in disputes."

In 1838 the Supreme Court of New York in the case of *Retan* v. *Drew*, 19 Wend., 304, held that the tender of money in satisfaction of a debt, after costs had been made before the commencement of the action by service of the declaration, without the tender of such costs, was not a good tender. This decision, although made by an able court, was not satisfactory to the profession, and in 1849 the question was again presented to the court in *Hull* v. *Peters*, 7 Barb., 331, and *Retan* v. *Drew* was overruled. A few extracts from the able and exhaustive opinion in that case will fully illustrate the subject. After referring to some previous cases the court say: "In *Retan* v. *Drew*, however, the point was presented and decided. The action there was assumpsit; the plea, tender before suit brought. The plaintiff replied that the tender was made after the declaration was filed, though before it was served, and that the damages and no cost were tendered. Upon demurrer to the replication the court held it good, upon the ground that the plaintiff was entitled to the cost of preparing to commence his suit. The distinguished judge who

delivered the brief opinion of the court in that case said, that " the action was not commenced for all purposes, yet the plaintiff before the tender having employed an attorney and incurred expense, and proceeding with all diligence to serve the declaration, the tender was insufficient without an offer to pay costs—*that a different rule would work injustice.* The authorities cited for this opinion are 19 Wend., 91; 2 Johns. Cases, 145; 2 Johns., 342. The first of these cases has been already examined and shown to have no applicability to this question. That in Johnson's Cases decides that *the issuing of a capias* was the commencement of a suit, and that a demand against the plaintiff subsequently acquired by the defendant could not be made available as a set-off. The case in Johnson's Reports decides that an averment in a plea that a cause of action was settled before the capias was sued out, is a good averment that the settlement was before suit brought. Thus it will be observed that we do not find any authority or precedent for the judgment in *Retan* v. *Drew*, and we shall not find it supported by subsequent adjudications."   *   *   *
" The decision rests solely on the moral equity of the case, that the debtor should reimburse to the creditor expenses necessarily incurred by reason of the neglect of the former punctually to perform his obligations. With due deference, I submit that. the case of *Retan* v. *Drew* is a departure from settled principles, and is not sustained by authority."   *   *   *
" Costs are recoverable, not simply because their recovery is just, but because the statute gives them. There is no statute giving a creditor the expenses of preparing to bring a suit, as such. Until a suit be actually commenced the statute knows no such thing as costs. When an action is pending, and not until then, they become an incident to the litigation. I am of opinion, therefore, that the tender of the debt in this case was sufficient without paying the plaintiff's cost."

We thus see that the Supreme Court of New York in *Retan* v. *Drew*, without sufficient consideration, followed their sense of equity, and established the rule which we are asked

to establish. But the same court shortly after, in *Hull* v. *Peters*, held the rule to be a departure from principle and reversed it. The latter case is embodied in the Digest of Abbott published in 1860, and that of Clinton published this year (1871,) as law, while the former is placed by both in their tables of disapproved and overruled cases, and the courts of that great commercial state remain steadfast to principle.

The foregoing cases are all that I have been able to find by extended search, in which an effort has been made to induce a court of law to require a tender of cost before suit pending, and in all the decisions have conformed to principle and been adverse.

For these reasons I think a new trial should be denied.

In this opinion FOSTER and GRANGER, Js., concurred. PARK and CARPENTER, Js., concurred in refusing a new trial on the ground that the rule of " *stare decisis*" should be applied to former decisions of the court.