[Civil No. 3765. Filed May 23, 1938.]

[79 Pac. (2d) 523.]

MAE SANDERS, Also Known as MAE DOE, and Whose True Name is to the Plaintiffs Unknown, Administratrix of the Estate of H. C. SANDERS, Deceased, Appellant, v. PHOEBE SANDERS and HALSEY SANDERS, Appellees.

158

Mr. Thomas W. Nealon, for Appellant.

Messrs. Cox & Moore, for Appellees.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Maricopa county, in favor of Phoebe Sanders and Halsey Sanders, hereinafter called plaintiffs, against Mae Sanders, as administratrix of the estate of H. C. Sanders, deceased, hereinafter called defendant. The proceedings were started by the filing of what is denominated a "complaint" in the superior court of Maricopa county, on

January 25, 1927. It set up, in substance, that plaintiffs were the surviving wife and only child, respectively, of H. C. Sanders who died in Arizona on December 22, 1924; that in 1925 a certain writing purporting to be his will was admitted to probate, and letters of administration, with the will annexed, issued to defendant, and that she thereafter qualified as such administratrix; that by the terms of said writing, defendant Mae Sanders was named as the sole legatee and devisee of H. C. Sanders, but that such writing was not written nor caused to be written by the said Sanders, but was written or caused to be written by the defendant and presented to the court for the purpose of cheating and defrauding the plaintiffs out of the property of Sanders. It further alleged that the defendant was not, and never had been, the wife of H. C. Sanders, for the reason that plaintiff Phoebe Sanders was married to him in the state of New York, in the year 1876, and such marriage was never dissolved nor annulled. There was a further allegation that plaintiffs had been ignorant of the proceedings to probate said will and the fact that it was a forgery until about March 1, 1926. The prayer of the pleading was that the order admitting the writing to probate as a will, and appointing the defendant as administratrix, be vacated and set aside and the alleged will be declared null and void, and that a proper administrator be appointed. Summons was issued in the usual form for a civil action and served upon defendant. An amended complaint was filed on June 23, 1928, and a citation issued thereon, which was also served on defendant. Thereafter she appeared specially for the purpose of quashing the citation. The motion to this effect was overruled, and the court, over defendant's objection, combined the present case with the probate proceeding known as the "Estate of H. C. Sanders." Thereafter defendant filed a special

appearance, moving to set aside the order of consolidation, on the ground that the court lacked jurisdiction of the subject matter and of the person of the defendant. No further proceedings were taken for some four years, when counsel for plaintiffs moved the case be set for trial. Thereupon defendant, expressly reserving her plea to the jurisdiction, demurred to the complaint on the ground that the action was barred by the statute of limitations, and again objected to the jurisdiction of the court, demurred generally to the complaint, and filed many special demurrers which, in effect, raised the same objections of the want of jurisdiction over the subject matter and the person of the defendant, and then answered, alleging that plaintiff Phoebe Sanders was not the wife of H. C. Sanders at the time of his marriage to defendant, and denied generally and specially all the other allegations of the complaint. The case came on for trial before the court sitting with a jury; special interrogatories were submitted to the jury, and they were answered to the effect that the alleged will was not in the handwriting of H. C. Sanders; that he was not an unmarried man at the time he contracted marriage with the defendant Mae Sanders in 1909, and that plaintiff Halsey Sanders was the son of H. C. Sanders. The court adopted these interrogatories, finding all the controverted facts in favor of plaintiffs, and rendered judgment thereon.

There are fifty-two assignments of error, which are grouped by defendant under twenty-two propositions of law. We will consider the case in such manner as seems best to us in order to determine the questions of law which are material to the appeal.

The first is as to the jurisdiction of the court over the subject matter and the person of the defendant. It is the position of defendant, in substance, that the suit started by plaintiffs was one in equity, and that

the court had no jurisdiction to set aside a will already admitted to probate in such a proceeding; that the attempted consolidation of the suit with the proceedings in probate of the estate of H. C. Sanders was made without jurisdiction, and that the defendant was not properly brought into court so that a judgment could be rendered against her. The determination of these questions involves some consideration of the nature of our judicial system.

Originally law, equity and probate were separate and distinct systems, administered by different courts acting independently of each other, and usually with some jealousy and little cooperation. As a result, the litigant, at his peril, was compelled to see not only that he had rights but that he attempted to enforce those rights in the proper court, and in the proper form of action, for if he was mistaken as to the court which had jurisdiction to protect his rights, or as to the remedy applicable thereto, judgment went against him, frequently without opportunity for another proceeding in the right court and form of action. The expensive and cumbersome nature of this tripartite system became more and more apparent, but it was not until about the middle of the last century that a serious attempt was made to remedy this situation. The state of New York was probably the first to adopt a comparatively simple, logical and workable system of procedure which could handle all classes of litigation. California quickly adopted the New York procedure, and most of the western states, including Arizona, have followed California very closely. Under our system there is but one court of original jurisdiction, which handles all litigation, with the exception of small matters which are still left to the justice court. This court is known as the superior court, and by our Constitution it is expressly given

jurisdiction of all cases of law, equity and probate, together with all special proceedings not otherwise provided for. But the Constitution which adopted this system did not thereby abolish the different remedies which previously existed under the common law, equity and the statutes of probate. It merely provided, as was said in *Re Burton's Estate,* 93 Cal. 459, 29 Pac. 36, 37:

" . . . The superior court, while sitting in matters of probate, is the same as it is while sitting in cases in equity, in cases at law, or in special proceedings; and, when it has jurisdiction of the subject-matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case. This is an incidental power pertaining 'to all courts for the purpose of enabling them to exercise the jurisdiction which is conferred upon them.' "

It is of course true that where the method of procedure is fixed by statute, the court must follow that method, but it is the same court at all times. Our legislature has in many respects simplified and consolidated the methods of procedure previously exercised by the different courts. So far as proceedings in law and equity are concerned, they are initiated by the same kind of pleading. Section 3746, Rev. Code 1928, says:

"*Contents of complaint.* The complaint shall set forth the names of the parties, a concise statement of the cause of action, without distinction between actions at law and in equity, and the nature of the relief demanded."

And when relief is to be administered, section 3834, Rev. Code 1928, provides:

"*General form.* The judgment of the court shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed

as to give the party all the relief to which he may be entitled either in law or equity.''

Probate procedure, it is true, being originally solely a creature of statute, and not of either equity or the common law, is much more strictly regulated by statute than is that of the ordinary civil action, but even in probate, unless the statute specifically provides otherwise, under our present system the general principles of pleading and practice, which are applicable to other civil actions, are applicable to probate matters. Under modern practice the courts have grown more and more to disregard the form of a pleading and look to its substance. They pay little attention to the name which the pleader may give the instrument, but much to the facts set forth therein. We think this principle applies to probate matters, and if the pleading which initiated the present proceeding sets forth facts which gives the superior court the right to act, it is immaterial what the pleading is called. Nor is it material whether we call the proceeding one in equity, or in probate, if it is authorized by law, for under our system, if the right exists, the courts are required to apply any necessary remedy known to the law, and not forbidden by statute, in order to protect that right. This proceeding was obviously based on article 2, chapter 88, Revised Code of 1928 (section 3889 et seq.), which deals with the probate of wills. By its terms, after a will has been admitted to probate, anyone interested may contest the probate and the validity of the will upon filing a petition showing why he thinks the will is invalid, and praying that the probate be revoked. The complaint in the present instance does set forth allegations which, if true, show the will is invalid, and the petition is that the probate be revoked. The next step required by the statute is the issuance of a citation to the administra-

tor, with the will annexed, and the legatees and devisees, requiring them to show cause why the probate of the will should not be revoked, which is served in the same manner as a summons in a civil action. The record shows that this was done, and that counsel for defendant stipulated that it might be done. There is no special provision as to how the matters alleged in the petition should be controverted, except that it shall be done by demurrer and answer, as in civil actions. Defendant answered both personally and as administratrix. The matter must be heard by a jury, if one is requested, which is required to return a special verdict. The record shows that this was the procedure followed. The relief asked was that authorized by the statute. Such being the case, the superior court had jurisdiction of both the subject matter of the controversy and of the person of the defendant, whether we call the proceeding one in equity or one in probate. And we think under section 3804, Revised Code of 1928, the court quite properly consolidated this proceeding with the estate matter. The opinion of the court in *Weyant* v. *Utah Sav. & Trust Co.*, 54 Utah 181, 182 Pac. 189, 9 A. L. R. 1119 (a case presenting a state of facts quite similar to this one), states very aptly the rule of law applicable to the issue under discussion, in the following language (page 198 of 182 Pac.):

" . . . The district courts of this state are therefore invested with jurisdiction in probate matters precisely the same as they are invested with all other civil and criminal jurisdiction. They transact probate business as they do all other civil business. True, in administering estates they follow the established law and rules of procedure applicable to those matters, the same as they follow the established law and rules of procedure applicable to so-called equity or law cases. Moreover, our Constitution provides that 'there shall be but one form of action, and law and

equity may be administered in the same action.' We therefore have no courts which are known as probate courts, or as law courts, or as equity courts; but we have courts possessed of general original jurisdiction, which are known as district courts. The district courts of this state, therefore, administer the estates of decedents as a part of their original jurisdiction, the same as they hear and enter judgments on promissory notes, or enter decrees in equity, foreclosing mortgages or quieting titles. . . .

"From a consideration of all the foregoing provisions and statements, it necessarily follows that in this state there is no such a thing as a particular form of action, nor a court in which particular forms of actions can be prosecuted or special remedies obtained. In this state, every person who has suffered injury to his person, to his property, or to his reputation may go into the district court, the court of original jurisdiction, and state the facts concerning his grievance, and if his statement of facts, when applied to the law entitles him to relief, the court is bound to grant him the relief to which the established facts, when applied to the law, whether legal or equitable, or both, entitled him. True, the plaintiff's rights and the relief ultimately granted, are based upon and measured by the established rules of law and procedure; but the court, in applying those rules, merely determines the nature and extent of the relief that shall be granted and enters judgment accordingly. When the respondents learned that they had been despoiled of their inheritance, and under the established rules of law and procedure they could obtain no redress by direct appeal from the decree of distribution in the probate proceeding, they were driven to seek redress in some other proceeding and by an attack upon the decree, provided they could establish the character of fraud which authorized such an attack, namely, extrinsic fraud. Under the authorities already referred to, such an attack, in this jurisdiction, is a direct attack. In our judgment the courts of this state—that is, the courts of original jurisdiction—were open to respondents for the purpose above

stated, provided they properly alleged sufficient facts to invoke action by the court."

We consider next the question of the statute of limitations, which was raised by defendant both by demurrer and by answer. This is governed by section 3909, Revised Code of 1928, which reads as follows:

"*Probate conclusive after one year; exceptions.* If no person, within one year after the probate of a will, contests the same or the validity thereof, the probate of the will is conclusive; provided that infants and persons of unsound mind, may bring such contest within one year after their respective disabilities are removed, and a like contest to cancel a will for forgery or fraud may be brought within one year after the discovery of such forgery or fraud, and not afterward."

The contest was based upon forgery and fraud, and it was alleged in the complaint that this forgery and fraud was not discovered until March, 1926, while the proceeding was commenced in January, 1927. Under this allegation, the court properly overruled the demurrer based on the statute of limitations. The answer also raised the issue, but thus raised it was a matter to be determined by the triers of fact, and we shall consider it at a later point. The record shows that after the amended complaint was filed, it was more than four years before the case was brought to trial. Defendant urges that our statute of limitations provides that an action must not only be *commenced,* but must be *prosecuted* within the one-year period, and the delay in prosecution brings the case within the statute. Section 3909, *supra,* which contains the particular limitation applicable to suits of this nature, says nothing about the *prosecution* of the action but merely that it "may be brought" within the year and "not afterward." But even were we to consider arti-

cle 2 of chapter 47 (section 2058 et seq.), which is the general statute of limitations as applicable to the present case, we think defendant's contention is not sound. We have not been cited to a single case which holds that after an action has been brought, delay in prosecuting it causes the statute of limitations to run. There are, indeed, a few cases cited by defendant where the appellate court has sustained the lower one in dismissing an action which has not been prosecuted to effect within a reasonable period. It is evident, however, from an examination of these cases that the real reason why the judgment was affirmed was that the trial court had determined the delinquent party had been guilty of laches, a defense which is very different from that of the statute of limitations. The one is based upon the statute and the time fixed is absolute; the other is an equitable defense and the time is within the judicial discretion of the trial court.

The next question for our consideration is whether or not Phoebe Sanders was a proper party to the case. Under section 3904, Revised Code of 1928, "any person interested" is a proper party to a will contest. If Phoebe Sanders was the wife of H. C. Sanders at the time of his death, she took one-half of the community property, regardless of whether the will was valid or not, for of course under our law he could only dispose of his half of the community property by will. If the will was not a valid one, she would still take but one-half, for the one-half belonging to H. C. Sanders would pass to his son, Halsey Sanders. In either case, therefore, she was not a person interested in the matter as heir or legatee, for her interest in the community property came to her in her own right, and not as heir of her husband. On the other hand, if the will was invalid, she would be entitled, as of right, either to letters of administration if she took

up her residence in Arizona, or to the right of appointment if she remained in the east. Sections 3922, 3925, Rev. Code 1928. We think her interest was sufficient to make her a proper party.

 The next question in its logical, though not numerical, order is whether the case was submitted to the jury on proper interrogatories. Section 3898, Revised Code of 1928, says that in the contest of a will

"an issue of fact thus raised . . . must, on written demand of either party, . . . be tried by a jury. If no jury is demanded, the court shall try the issues. . . ."

Section 3899, Revised Code of 1928, provides:

"The jury shall return a special verdict upon the issues submitted to them. . . ."

It is urged by defendant that the interrogatories submitted to the jury did not cover the issues raised in the contest, and that the court erred in not submitting the other interrogatories which she requested. Plaintiffs, on the other hand, contend that it is within the discretion of the court to submit interrogatories or not, as it sees fit, and cites in support of this contention the case of *Ainsworth* v. *National Bank,* 33 Ariz. 466, 266 Pac. 8. We held that case was governed by the provisions of paragraph 542, Revised Statutes of Arizona 1913 (Civil Code, as amended), now section 3829, Revised Code of 1928, and that in the ordinary equitable proceeding the submission of interrogatories was discretionary with the court. We think, however, that this proceeding is governed by the provisions of the special statute applicable to contests of wills, and not by the general statute referred to in the Ainsworth case, *supra.* It was the duty of the court, therefore, to submit special interrogatories on all of the issues of fact necessary to a

determination of the case, and raised by the pleadings. We think these were four in number. The first is whether the will in question was a forgery. If it were, it was the plain duty of the court, under the statute, to revoke the probate, regardless of whether there had been any fraud in its presentation to the court or not. Even the most perfect good faith on the part of defendant would be of no avail in sustaining the will if, as a matter of fact, it were a forgery. If the signature to the purported will was not in the handwriting of H. C. Sanders, the instrument was necessarily a forgery. The expert witness for plaintiffs testified positively that both the signature and the body of the will were written by the same person, and that person was not H. C. Sanders. The expert witnesses for the defendant all testified that the signature and the body of the will were written by the same person, and that that person was, in their opinion, H. C. Sanders. On this evidence, the interrogatory submitted by the court, in the following language: "Is the purported will, Plaintiffs' Exhibit 'D' in evidence, in the handwriting of H. C. Sanders, deceased?" definitely submitted to the jury the issue of whether the will was or was not a forgery. The jury answered the interrogatory in the negative, which determined that the will in question was a forgery. The only other questions which were material to any phase of the case on any theory, if the will were a forgery, were whether the plaintiffs, at the time of the death of H. C. Sanders, were respectively his surviving wife and only child, and when the forgery was discovered by them. The court submitted the following interrogatories on these questions:

"Was H. C. Sanders, an unmarried man at the time he contracted marriage with the defendant Mae Sanders on January 29, 1909?"

"Is Halsey Sanders the son of H. C. Sanders, deceased?"

Since defendant relied for her claim that she was the wife of H. C. Sanders at the time of his death, on the marriage performed on January 29, 1909, the negative answer of the jury to the second interrogatory determined that she was not entitled to any interest in the estate of H. C. Sanders, and from the affirmative answer of the jury to the third interrogatory, it necessarily followed that the other plaintiff, Halsey Sanders, was entitled to one-half of the estate of H. C. Sanders, if Phoebe Sanders was his wife at the time of his death, and to the entire estate if she was not.

The fourth question of whether plaintiffs knew, or should have known, of the forgery of the will before January, 1926, was not submitted to the jury, but the court found, and so stated in its findings of fact, that the plaintiffs did not learn of such illegality until about April, 1926. No request was made by defendant that this matter be submitted to the jury by a proper interrogatory, nor do we find that any error was assigned for the failure of the court to submit it. We think that defendant is not in a position, under the circumstances, to question the failure to submit the issue to the jury. The only assignment of error which we find covering this point is that the court erred in its findings of fact. There is, however, a sharp conflict in the evidence, and the finding of the court as to the date of discovery is, therefore, binding on us.

The next question for our consideration is in regard to the sufficiency of the evidence to sustain the finding of the jury that when H. C. Sanders married defendant he was not an unmarried man. We have had a somewhat analogous question before us in the cases of *McCord* v. *McCord*, 13 Ariz. 377, 114 Pac.

968, and *Kolombatovich* v. *Magma Copper Co.*, 43 Ariz. 314, 318, 30 Pac. (2d) 832. In the last-named case we said (page 834):

" . . . Both the law and public policy favor matrimony and when it is once shown that a marriage has been celebrated, the contract, the parties' capacity to enter into it, and in fact every act necessary to its validity, will be presumed, in the absence of proof to the contrary. The presumption that it was legal and valid in all respects is one of the strongest known to the law, and while it is true that the marriage relation when once proven is presumed to continue, yet this presumption attaches with full force to the second or latest marriage, and the reason for this is that the 'presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of the continuance of the former relations.' 18 R. C. L. 417.

"There seems to be no division of authority on the proposition that where one contracts a second marriage during the lifetime of the first spouse the presumption that the first marriage was legally dissolved prevails and the one who asserts that the second marriage is invalid has the burden of showing that there has been no divorce. The following excerpts show this:

" 'When a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the *prima facie* legality of the last marriage. The presumption in such a case is that the former marriage has been legally dissolved, and the burden that it has not rests upon the party seeking to impeach the last marriage.' 18 R. C. L. 417.

" 'Mere proof of a prior marriage and that one party had not obtained a divorce is not sufficient, for the other might have obtained such divorce and left him

or her free to contract the second marriage.' 18 R. C. L. 420.

" 'In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage.' 38 C. J. 1328, 1329.''

 It is evident therefrom that the presumption of law was that at the time of the marriage of defendant to H. C. Sanders in 1909, he had been divorced from Phoebe Sanders. Is there sufficient evidence in the record to the contrary to sustain the answer of the jury to the interrogatory? Plaintiffs contend that there is, and have cited us to many places in the transcript of evidence which they claim support the contention. We review this evidence as follows:

Halsey Sanders testified, in substance, that his mother had received a paper from Butte, Montana, claiming his father had died there and was buried in the mines; that later on when he visited his father, the latter asked how his mother was getting along and stated that he wanted to send her a rug; that he had never denied that Phoebe Sanders was his wife; that he had seen a letter from his father, after his sister had died, and that he did not know that his father had ever gotten a divorce from his mother. Phoebe Sanders testified that she had never received any notice from H. C. Sanders that he was suing her for a divorce. We think under the holding in *Kolombatovich* v. *Magma Copper Co., supra,* that this is no evidence whatever that H. C. Sanders had never been divorced from Phoebe Sanders. The most that it does would

be to sustain a finding that neither of the plaintiffs ever knew of any divorce having been granted. This is insufficient to overcome the presumption that at the time H. C. Sanders married defendant he was not married to plaintiff Phoebe Sanders.

 The only other matter which we think it necessary to discuss relates to the allegations of the complaint that defendant was guilty of fraud in presenting the purported will for probate. This issue was not submitted to the jury, as requested by defendant, but the court found that she was guilty of fraud. It was error to refuse to submit the issue, but we think the error was immaterial in view of the finding of the jury that the will in question was a forgery. It is not necessary, under section 3909, *supra,* in order to sustain a contest of a will that there shall have been fraud in its probate. The grounds for revocation of probate, under that section, are in the alternative, either forgery or fraud. When the one is proved, it is immaterial whether the other is established or not.

There are a number of other minor questions raised by the assignments of error, but in view of what we have said, we think it unnecessary to discuss them, though we have considered them all.

 The finding of fact made by the court that the plaintiff Phoebe Sanders was the wife of H. C. Sanders at the time of his death cannot be sustained, and that portion of the judgment dependent upon it necessarily falls. The findings in regard to the forgery of the will and the fact that plaintiff Halsey Sanders was the son of H. C. Sanders are sustained by the evidence.

Under the provisions of section 3681, Revised Code of 1928, the judgment of the superior court of Maricopa county is modified by striking therefrom that portion which declares that Phoebe Sanders is the

surviving wife of H. C. Sanders, deceased, and is affirmed as modified.

McALISTER, C. J., and ROSS, J., concur.