STATE EX REL. LEWIS S. FELSON ET AL. *v.* HAROLD W. ALLEN, REGISTRAR OF VITAL STATISTICS OF GREENWICH.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and O'SULLIVAN, JS.

Argued October 8—decided December 2, 1942.

*Julius B. Kuriansky,* for the appellants (plaintiffs).

*H. Allen Barton,* for the defendant (appellee).

MALTBIE, C. J. The plaintiffs, alleging that they were married in 1921 in the town of Greenwich in this state, brought this action seeking, by mandamus, to compel the defendant, the registrar of vital statistics of that town, to make a record of the marriage. Judgment was rendered for the defendant. Thereafter the plaintiffs moved to open the judgment to permit them to file a proposed amendment to the complaint seeking a declaratory judgment determining, first, whether they were lawfully married in Greenwich on September 21, 1921, and, secondly, whether they are, as the result of the claimed marriage on that day, husband and wife. The motion was granted and the amendment filed. Thereafter the trial court rendered a second judgment for the defendant, holding that the plaintiffs were not entitled to the mandamus sought, and that, in an action seeking that relief, they did not have a right to the declaratory judgment they asked. The plaintiffs have appealed.

On September 21, 1921, both plaintiffs were residents of New York. They were engaged to be married. On the evening of that day they drove to Greenwich for the purpose of being married. They accosted a person on a street there, who directed them to an address. They found a house on which was fastened a small card with the words "Justice of the Peace" on it. There they signed a paper which they assumed was an application for a marriage license, and a man purporting to be a justice of the peace went through a mar-

riage ceremony with them. In the course of it they entered into a mutual agreement to take each other as husband and wife. A document purporting to be a marriage certificate was delivered to them. That paper has been lost and the address of the house and the names of the persons present are now unknown. There is no record in the office of the defendant of the issuance of a marriage license to the plaintiffs, or of their marriage. After the ceremony, they immediately returned to New York and resided there until 1927, when they moved to Montreal in the province of Quebec, Canada, and they have since resided there. During all this time they have held themselves out, and have been regarded by their friends and in the communities in which they have lived, as husband and wife. They have a son, born to them in 1926.

The claim of the plaintiffs is that, even lacking proof that the person who purported to perform the marriage ceremony was qualified to do so, the mutual interchange of promises on that occasion was sufficient to constitute a common-law marriage which would be valid under the laws of this state. Unless under our laws that interchange of promises would constitute a valid marriage, the plaintiffs would not be entitled to a declaratory judgment that they were validly married on the occasion in question or to the specific relief by mandamus which they sought, and, whether or not the trial court was right in its conclusion that they were not entitled to the declaratory judgment asked in the amended complaint, the judgment rendered was substantially correct. We pass, then, other questions suggested by the record and consider only whether the plaintiffs, upon the facts before us, were validly married at Greenwich on the occasion in question.

Previous to 1820 our statutes provided that no person other than a "Magistrate or Justice of the Peace"

or an "ordained minister" could join persons in marriage; but while it provided a qui tam penalty if the marriage was performed in the absence of certain requirements, as the publication of banns, it fixed no penalty for the performance of the ceremony by one not qualified and did not expressly declare a marriage so performed to be void. Statutes, 1796, p. 286. Judge Tapping Reeve, in his work on Domestic Relations written in 1816, notes the fact (p. 197) that there seemed to be much difference of opinion whether a marriage ceremony performed by one not qualified under the statute was void, and he was of the opinion that it was not. That, previous to 1820, marriages of that nature were valid in Connecticut, as they were in England before the statute 26 Geo. II, Chap. 33, is strongly suggested in a note by the reporter Thomas Day, found 6 Conn. 53. The English statute just cited expressly provided that marriages not performed in accordance with its provisions were null and void, and Judge Reeve, in his discussion, contrasted that statute with our own. In 1820 our marriage law was amended so that it authorized judges of the Superior and County Courts, justices of the peace and ordained ministers to join persons in marriage and added that "all marriages attempted to be celebrated by any other persons, shall be void." Public Acts, 1820, Chap. 13, § 2. To this statute as it appeared in the Revision of 1821, p. 316, is appended a note, of which no doubt Zephaniah Swift or Thomas Day was the author, in which it is stated: "By the former statute, every person, except a magistrate or ordained minister, was prohibited from performing the marriage ceremony; and a question having been frequently agitated, whether a marriage by any other person was valid, it was thought best to remove all doubt, by declaring it to be void." In *Gould* v. *Gould*, 78 Conn. 242, 246, 61 Atl. 604, this court, speak-

ing by *Baldwin, J.*, referred to the doubt as to the validity of marriages celebrated in contravention of the prohibition of the statute, and stated that the Act of 1820, which followed in part the English Act, was intended to settle the point by expressly declaring such marriages to be void. That a marriage not celebrated by one authorized by the statute is not valid underlay our decisions in *Kibbe* v. *Antram,* 4 Conn. 134, and *Goshen* v. *Stonington,* 4 Conn. 209.

A failure to comply with many of the requirements as to marriage provided in our statutes, where there is no express provision that such a failure will invalidate it, will not have that effect; *Gould* v. *Gould,* supra; but we cannot disregard the plain mandate of the statute in question. See *Olivari* v. *Clark,* 175 Miss. 883, 895, 168 So. 465; *Succession of Marinoni,* 177 La. 592, 621, 148 So. 888; *Beverlin* v. *Beverlin,* 29 W. Va. 732, 738, 3 S. E. 36; *Offield* v. *Davis,* 100 Va. 250, 255, 40 S. E. 910. In states which recognize common-law marriages, it is usually pointed out that their statutes do not contain any provision which expressly states or clearly implies that marriages not in accordance with the requirements fixed are void. See *Meister* v. *Moore,* 96 U. S. 76, 80; *Matter of Ziegler* v. *Cassidy's Sons,* 220 N. Y. 98, 103, 115 N. E. 471; *Chace, Petitioner,* 26 R. I. 351, 354, 58 Atl. 978; *State* v. *Walker,* 36 Kan. 297, 303, 13 Pac. 279; *Caras* v. *Hendrix,* 62 Fla. 446, 451, 57 So. 345; *Dyer* v. *Brannock,* 66 Mo. 391, 410.

Our present statute, while it has been somewhat broadened as regards the persons authorized to perform the marriage ceremony, still contains the provision that "all marriages attempted to be celebrated by any other person shall be void." General Statutes, § 5153. The plaintiffs appeared in Greenwich before a person whom they believed to be a justice of the peace; he purported to join them in marriage, but they are

unable to prove that he was authorized by the statute to do so, and they do not claim that there is any basis upon which we can hold that he was. The situation falls within the express terms of the statute, which declares such a marriage to be void. Nor can it avail the plaintiffs that they there exchanged promises which would have constituted a marriage per verba de praesenti at common law. While the statute in terms makes void only a marriage celebrated by an unauthorized person, the provision carries the necessary implication that no valid marriage is created when there is no celebration at all but merely an exchange of promises, or cohabitation under such circumstances as would constitute a common-law marriage. Swift, writing in 1822 and going on to discuss the statute, says: "The contract must be solemnized according to the ceremonies prescribed by law." This conclusion gains further support from our decisions in which we have held that cohabitation as husband and wife is evidence, and often sufficient evidence, that the parties have been validly married, but does not in itself constitute a marriage. *Budington* v. *Munson,* 33 Conn. 481, 484, 487; *Eva* v. *Gough,* 93 Conn. 38, 48, 104 Atl. 238. In *State* v. *Schweitzer,* 57 Conn. 532, 538, 18 Atl. 787, we said: "Cohabitation does not make a marriage, but it is evidence from which a jury have a right to find an actual marriage." Our law does not recognize common-law marriages.

It follows that the plaintiffs are not entitled to a judgment declaring that they were validly married on the occasion in question and that there is no basis upon which a mandamus could issue directing the defendant to record their marriage.

There is no error.

In this opinion the other judges concurred.