118

MARIE HADERASKI, Appellee, *vs.* FRANK J. HADERASKI, Appellant.

*Opinion filed May 20, 1953.*

EARL WILCOX, and JOHN P. BURITA, both of Chicago, for appellant.

IRA D. SCHULTZ, of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Frank J. Haderaski, appellant, seeks here a review of the decree entered in the superior court of Cook County, wherein his marital status and property rights were adjudged contrary to his contention. A freehold being involved, this court must assume jurisdiction. We will refer to the plaintiff, Marie Haderaski, as appellee, and to the defendant, Frank J. Haderaski, as appellant.

Appellee filed her complaint for divorce against appellant on June 15, 1951, charging drunkenness and alleging that one child, eight years of age, was born to the union; that appellee and her two daughters by a previous mar-

riage had been gainfully employed for several years and that the proceeds from such employment, in the main, went into the hands of the appellee; that on September 6, 1944, the appellee and appellant purchased a lot and frame shack located on Fox Lake in McHenry County; that it was principally her money that was used as a purchase price and for extensive improvements made on the property; and that the title to this real estate was placed in the names of the parties as joint tenants. In the complaint appellee sought a divorce, child support and the title to the Fox Lake summer home.

The appellant, answering, denies that he and appellee were lawfully joined in marriage on October 9, 1940, or that he was married to her at any other time; and that "as a result of said marriage there was born to the parties hereto a child, named Diane, now the age of 8, or that there was any other child or children born to the parties hereto as a result of a marriage between them." And he further denies that it was appellee's money used to purchase the real estate involved.

Appellant also filed a cross complaint, alleging that on October 9, 1939, the appellee had a husband living from whom she was not divorced; that all real estate in the name of appellee and appellant is equitably his and should be so decreed.

Pursuant to an order of court, on August 1, 1951, appellee filed an amendment to her complaint, alleging that she and appellant were lawfully married on February 13, 1944, in St. Lucy's Catholic Church at Chicago. This was denied by appellant in his answer thereto.

Trial was first had before the chancellor, without a jury, to determine the validity of the church marriage. Appellant contended in the court below and here that the ceremony in the church was not a marriage, but was a blessing of marriage. This contention was completely contradicted by a document known as a church questionaire,

plaintiff's exhibit No. 1, which appellant admitted signing and which reads as follows:

"Q. 18. Are you entering this marriage freely and of your own accord?

A. Yes.

Q. Are you being compelled by any person, circumstance, etc.?

A. No.

Q. Is your intended wife marrying you freely and under her own accord?

A. Yes.

Q. Is she being compelled by any person, circumstance, etc.?

A. No.

Q. Do you understand the nature and obligations of marriage?

A. Yes.

Q. 20. Do you intend to enter a permanent marriage that can be dissolved only by death?

A. Yes.

Q. 23. Are you entering this marriage without condition or reservation?

A. Yes.

Q. 27. Do you understand that when you sign this document you preclude the possibility of ever contending that this marriage is invalid as far as you are concerned?

A. Yes."

Plaintiff's exhibit No. 2 is a marriage certificate signed by the priest and two witnesses, which appellant acknowledged seeing but said that appellee received both copies.

We are of the opinion that the chancellor properly rejected appellant's contention on this issue. The rule in Illinois as to the validity of a marriage without a license is stated further in Puterbaugh Chancery Pleading and Practice, 7th Edition, (Vol. 1, p. 631) as follows: "The general rule in Illinois is that unless the Statute expressly

declares a marriage contracted without the necessary parental consent, or compliance with other requirements to be a nullity, such statutes will be construed to be directory only in this respect, so that the marriage will be held valid, although an infraction of the statute may entail penalties." Section 6 of the Marriage Act provides the necessity for securing a license before marriage; it contains no provision, however, that any marriage without such license will be null and void. (*Boysen* v. *Boysen,* 301 Ill. App. 573; *Springer* v. *Springer,* 75 N.Y. S. 2d 471.) In the latter case this language is found: "It is uniformly held in those states in which a license is required that a marriage celebrated without a license, although the persons officially or the parties, may be punished criminally, is valid unless the statute contains mandatory provisions that the marriage should be void." Section 4 of the Marriage Act (Ill. Rev. Stat. 1951, chap. 89, par. 4,) sets forth the person or persons who are granted authority to perform marriage ceremonies and under that section a duly ordained priest of the Catholic church has the authority to perform a marriage ceremony.

The same argument made by the appellant here was urged in the case of *Landry* v. *Bellanger,* 120 La. 962. There, the church marriage without a license was attacked on the grounds that the husband intended merely a blessing of a previously void civil marriage. In that case, as in ours, the wife had a husband living from whom she was not divorced at the time of her entering into her second marriage; answering the husband's claim that no new marriage license was obtained and that the ceremony was merely a blessing, the court, at page 964, said: "The priest thought that, at the time of her marriage before the justice, defendant had been divorced from her first husband, and that as a consequence the first marriage was a valid marriage in the eye of the civil law, though no marriage in the eye of the church; and, as a consequence, he thought

that a new license did not need to be obtained nor a new certificate, or act of marriage, be sent to the clerk of court; but he considered that an act or record of the marriage was necessary for the church, and accordingly he made the following entry on the record of marriages of his church, and caused the parties and two witnesses to sign it, the church requiring only two witness and not three like the civil law: * * * Learned counsel also argue that the priest testifies that he understood that the parties were already married civilly, and that all that was needed at his hands was a religious blessing of their marriage. It must be admitted that the Reverend Father is not as clear as he might have been in his explanations; but the foregoing extract from his testimony shows unmistakably that the ceremony which had taken place before the justice was no marriage at all in the eye of the church, and that the ceremony which he performed was an actual marriage, and not merely the offering of a prayer over an existing marriage. The record which he drew up, in witness and faith of what he had done, and which he caused to be signed by the witnesses and the parties, was not the record of a prayer or blessing over an existing marriage but, in its own words, was 'the present act of marriage.' "

Then the court proceeded to hear the evidence adduced on behalf of appellee and appellant on the other issues presented by the pleadings. Although the proof was not very heavy on the charge of drunkenness, we concur with the determination made by the court that appellee should have a divorce on that ground.

Appellant was a first and second cook on the New York Central line running between Chicago and New York, earning between three and four hundred dollars a month. He was thus employed for 18 years and was on the road most of the time. The record discloses that his interest in his family was negligible. From June 19, 1951, to November of the same year, he paid only $24 for the support of his

only child. The court decreed that the real estate involved equitably belonged to the plaintiff. The proof clearly indicated that it was the product of her efforts and financial contributions. The wisdom and fairness of this determination is readily apparent when it is considered that appellant is relieved of all claim for alimony and his delinquency in a child-support order was forgiven. Since their relationship was no longer cordial and their conflicts irreconcilable, it was certainly in the interest of harmony that their summer home should no longer remain jointly owned.

The decree entered below also provided for child support and attorney's fees. Appellant was ordered to pay $18 per week for the support of Diane and $250 for appellee's attorney. Like all other determinations made by the chancellor in this cause, they are proper and should be affirmed.

*Decree affirmed.*