HILLE PERLSTEIN *v.* SIMA PERLSTEIN

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued October 13—decided November 10, 1964

*Bernard E. Dubin,* for the appellant (plaintiff).

*Morris Apter,* with whom was *Arnold E. Buchman,* for the appellee (defendant).

KING, C. J. The plaintiff husband instituted this action against the defendant wife, claiming an annulment of their purported marriage. While the complaint lacks clarity, the allegations of fact in the plaintiff's answer to the defendant's plea in abatement, admitted by the defendant's demurrer to that answer, make it clear that the annulment is claimed on the ground that the defendant was legally married to another at the time she went through the marriage ceremony with the plaintiff in Hartford, Connecticut, on August 25, 1959.

The court sustained the demurrer to the plaintiff's answer to the plea in abatement, the plaintiff chose not to plead over, and judgment was thereupon rendered that the action abate. A motion to erase, based on substantially the same jurisdictional ground as the plea in abatement, was also granted. From separate judgments[1] erasing and abating the action for want of jurisdiction this appeal is taken.

## I

The ground of the jurisdictional attack was that this action was for the annulment of a bigamous marriage and could be maintained only if the defendant, who was a resident of the state of New Jersey at the time of the institution of the action,

[1] No question is raised as to the propriety of this procedure, and the result reached on this appeal makes any comment unnecessary.

was personally served within Connecticut. Service had been constructive, by registered mail addressed to the defendant in New Jersey.

At the outset, it should be noted that the defendant's claim is concerned with jurisdiction of the person, that is, jurisdiction to affect the rights of this particular nonresident defendant, in this particular action, on the basis of the particular service of process utilized. There is no doubt that the Superior Court has jurisdiction over the subject matter of annulment where, as here, the plaintiff is domiciled in Connecticut, and this is so whether the ground relied upon would make the marriage void or voidable. General Statutes § 46-28; Restatement, Conflict of Laws § 115 (1); id., §§ 109-111 and § 113 as amended in the 1948 Sup., p. 111. Indeed, the defendant does not seem seriously to contest the court's jurisdiction of the subject matter.

The rule denying that jurisdiction over this nonresident defendant can be acquired by constructive service outside Connecticut appears to be the majority rule today. Note, 128 A.L.R. 61, 73; 43 A.L.R.2d 1086; 4 Am. Jur. 2d, Annulment of Marriage, § 65. It is set forth perhaps as well as anywhere in the case of *Owen* v. *Owen*, 127 Colo. 359, 257 P.2d 581. In essence, in a case seeking annulment of a bigamous marriage, the majority rule proceeds upon two grounds. The first relates to the situation during the pendency of the action and prior to the rendition of the decree of annulment. The second applies to the action upon the rendition of the decree of annulment.

A

The first ground is that, by instituting an action for the annulment of a marriage on the claim that

it is bigamous, the plaintiff necessarily claims that the marriage is "void";[2] that, therefore, there can, on the plaintiff's own claims, be no marriage status, and, consequently, no res; and that without a res the action is necessarily in personam. Admittedly, in personam jurisdiction cannot be acquired over a nonresident defendant by constructive service without the state.

One vice in the reasoning of this first ground is that it presupposes that the marriage status, in the constitutional sense, can be changed by a plaintiff's claims. Obviously, status either exists or it does not exist, and a plaintiff cannot create it or destroy it by his claims as to the validity or invalidity of the marriage.

Another vice in the reasoning is that it overlooks the fact that the terms "in rem" and "in personam" are not apt in describing the character of an action seeking to affect marital status. Such an action is neither an action merely in personam nor a true action in rem. In the constitutional sense it requires, in the forum state, the domicil of at least one of the parties to the marriage. In the determination of jurisdiction to render a decree affecting the marriage status, the search must be for a domicil, not for a status or res. *Williams* v. *North Carolina*, 317 U.S. 287, 297, 63 S. Ct. 207, 87 L. Ed. 279.

---

[2] Where the marriage sought to be annuled is voidable, as distinguished from being "void", it is generally agreed that the marriage status does persist unless and until a decree of annulment is rendered. 4 Am. Jur. 2d, Annulment of Marriage, § 2.

In Connecticut, by statute (§ 46-13), fraudulent contract is a ground for divorce. This ground probably embraces some situations which, at least in jurisdictions not having such a ground of divorce, could also support an action for annulment. See cases such as *Lyman* v. *Lyman*, 90 Conn. 399, 403, 97 A. 312; *Vendetto* v. *Vendetto*, 115 Conn. 303, 305, 161 A. 392.

Manifestly, domicil cannot be affected by the type of action instituted.

Moreover, the status of marriage is an intangible res, entirely different from the tangible res of real estate or personal property within the jurisdiction upon which a true in rem action can be based as in cases such as *Harris* v. *Weed,* 89 Conn. 214, 221, 93 A. 232, or a quasi in rem action as in cases such as *Pezas* v. *Pezas,* 151 Conn. 611, 614, 201 A.2d 192. Thus, if the parties are domiciled in separate states, jurisdiction over the marriage status exists in each state, and under the "res" theory, the res necessarily exists in each state. The res is not, nor can it be, independently ascertainable as such, apart from domicil. The existence of the status or "res" in the forum state stems solely from the fact that the domicil of at least one party to the marriage is in that state. *Rice* v. *Rice,* 134 Conn. 440, 445, 58 A.2d 523, aff'd, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957; *Cook* v. *Cook,* 342 U.S. 126, 127, 72 S. Ct. 157, 96 L. Ed. 146; note, 96 L. Ed. 152, and earlier annotations therein referred to. If domicil exists in a state, jurisdiction to affect the status of marriage exists in that state, regardless of whether the status does or does not fit into the classic concept of a "res". See *Williams* v. *North Carolina,* supra.

A marriage ceremony, especially if apparently legally performed, gives rise to a presumptively valid status of marriage which persists unless and until it is overthrown by evidence in an appropriate judicial proceeding. No mere claim of bigamy, whether made in a pleading or elsewhere, would establish that a marriage was bigamous. See cases such as *Roxbury* v. *Bridgewater,* 85 Conn. 196, 202, 82 A. 193. Seldom, if ever, would a party to a bigamous marriage, in the face of the presumption

of its validity, feel free to treat the marriage as a nullity without a decree of annulment. Nor do we believe any attorney would advise such a course of conduct. The state's concern in the marriage status of its domiciliaries imperatively demands that the invalidity of the purported marriage be judicially determined before that invalidity be accepted. See *Williams* v. *North Carolina,* supra, 298; 4 Am. Jur. 2d, Annulment of Marriage, § 2. If judicial action is needed, it must be because, in some degree at least, a status of marriage exists. If it does exist, then to that extent at least it is a res, as far as there is any res in a status action, and must be treated as such. Even theoretically, it is inaccurate to state that in this case there is no "res" during the pendency of the annulment action.

## B

The second ground on which the majority rule proceeds is that upon the rendition of a decree of annulment the marriage is made void retroactively from its inception, and, therefore, there can be and is no status or res on which the court could act.

Under this theory, whether or not a status exists prior to a decree of annulment, upon the rendition of such a decree the court necessarily determines that such a status does not exist and, ab initio, never did exist, and thereby ousts itself, by its very decree, of any jurisdiction to render that decree against a nonresident defendant constructively served by mail. *Owen* v. *Owen,* 127 Colo. 359, 365, 257 P.2d 581.

"Despite the legal fiction that a judgment in . . . [an annulment] case relates back to the inception of the marriage, for some purposes, such a judgment involves and vitally affects the status of the

parties from a logical, legal and practical standpoint." *Buzzi* v. *Buzzi,* 91 Cal. App. 2d 823, 825, 205 P.2d 1125, cert. denied, 338 U.S. 894, 70 S. Ct. 244, 94 L. Ed. 549. The legal fiction that an annulment relates back to destroy the marriage ab initio is one applied only as the "purposes of justice" require. *Gaines* v. *Jacobsen,* 308 N.Y. 218, 225, 124 N.E.2d 290. Certainly, neither justice nor this state's interest in the marriage status of its domiciliary would be advanced by the application of such a legal fiction here.

Our annulment statute itself (§ 46-28), although referring to "void or voidable" marriages, provides that the court may grant alimony, and custody and support orders for any minor child, as in the case of divorce. Public Acts 1963, No. 105, amended the section by adding a sentence declaring that "[t]he issue of any void or voidable marriage shall be deemed legitimate." These provisions are irreconcilable with the theory that even a marriage claimed to be void is, or upon the rendition of a decree of annulment retroactively becomes, an absolute nullity ab initio so that nothing in the way of a status or res ever flowed from the marriage. See *Gaines* v. *Jacobsen,* supra.

In the instant case the plaintiff's Connecticut domicil would give jurisdiction for a decree of divorce even upon constructive service on a nonresident defendant. We agree with the California court in *Buzzi* v. *Buzzi,* supra, that the same jurisdictional requirements apply in the case of an action for annulment. We further hold that this is so whether the action is based on a ground which, if established, would make the marriage "void" or "voidable". Any other rule would leave it in the power of a party to a bigamous marriage, by

removing himself to a jurisdiction in a remote part of the world, to force an innocent Connecticut party, domiciled in this state, to resort to the tribunals (if any) of that jurisdiction in order to secure relief (if any were there obtainable) from the obviously intolerable situation of a subsisting marriage bigamous in fact. Public policy does not support or countenance such a rule, and no hypertechnical, unrealistic and inaccurate definitions of the terms "status" and "res" make it constitutionally necessary to follow such a rule. *Williams* v. *North Carolina,* 317 U.S. 287, 298, 63 S. Ct. 207, 87 L. Ed. 279.

Indeed in this very case, it is admitted that both parties were domiciled in Connecticut when and before the marriage was celebrated, and that this joint domicil continued until the defendant moved to New Jersey not long prior to the institution of this action.

## II

It perhaps should be pointed out that our statute (§ 46-28) conferring jurisdiction on the Superior Court to render a judgment of annulment contains no particular residence requirement, nor any particular requirement as to service of process. *Mazzei* v. *Cantales,* 142 Conn. 173, 176, 112 A.2d 205. It follows that the statute (§ 52-68) generally governing service by publication on a nonresident defendant properly applies to an annulment action where, as here, the plaintiff is domiciled in Connecticut. See cases such as *Hartley* v. *Vitiello,* 113 Conn. 74, 81, 154 A. 255. That statute was followed in the instant case and resulted in actual notice within a few days. Thus, no question can arise as to conformity with the statutory requirements of

the forum with respect to residence or manner of service of process.

## III

Lastly, the defendant makes much of the case of *Mazzei* v. *Cantales,* supra. It is true that that case contains dicta (p. 178) supporting the majority rule, which we have rejected. The actual holding of that case, however, is stated on page 179 of the opinion in the following language: "Where both parties to an action for annulment of a void marriage are nonresidents and the defendant is not served with process within this state or does not appear and submit to the jurisdiction of the . . . [c]ourt, the fact that the marriage was performed within this state does not empower the court to obtain jurisdiction over the defendant by constructive service and to render a judgment annulling the marriage." See 43 A.L.R.2d 1086, footnote 2. This holding is not inconsistent with the position which we take in this case. Here, the plaintiff is, and at all times has been, a domiciliary of Connecticut.

## IV

There is error, the judgments erasing and abating the action for lack of jurisdiction are set aside and the case is remanded for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.