EVELYN B. CARABETTA *v.* JOSEPH F. CARABETTA

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 8—decision released November 25, 1980

*James R. Greenfield,* with whom was *Louise C. LaMontagne,* for the appellant (plaintiff).

*William A. Jacobs,* with whom were *Irving H. Perlmutter* and, on the brief, *Gary P. Sklaver,* for the appellee (defendant).

PETERS, J. This is an appeal from the dismissal of an action for the dissolution of the marriage between the plaintiff, Evelyn B. Carabetta, and the defendant, Joseph F. Carabetta. The trial court, *Reynolds, J.,* determined that the parties had never been legally married and thereupon granted the defendant's motion to dismiss for lack of jurisdiction over the subject matter. From the judgment rendered against her, the plaintiff has appealed.

Neither the plaintiff nor the defendant presently disputes the facts found in the trial court's memorandum of decision, which establish the following. The plaintiff and the defendant exchanged marital vows before a priest in the rectory of Our Lady of Mt. Carmel Church of Meriden, on August 25, 1955, according to the rite of the Roman Catholic Church, although they had failed to obtain a marriage license. Thereafter they lived together as husband and wife, raising a family of four children, all of whose birth certificates listed the defendant as their father. Until the present action, the defendant had no memory or recollection of ever having denied that the plaintiff and the defendant were married.

The issue before us is whether, under Connecticut law, despite solemnization according to an appropriate religious ceremony, a marriage is void where there has been noncompliance with the statutory requirement of a marriage license. This is a ques-

tion of first impression in this state. The trial court held that failure to obtain a marriage license was a flaw fatal to the creation of a legally valid marriage and that the court therefore lacked subject matter jurisdiction over an action for dissolution. We disagree with the court's premise and hence with its conclusion.

The determinants for a legally valid marriage are to be found in the provisions of our statutes. "At least since *Maynard* v. *Hill,* 125 U.S. 190, 210–14, 8 S. Ct. 723, 31 L. Ed. 654 (1888), it has been clear that the legislature has plenary power to determine the circumstances under which a marital relationship is created and terminated. *Morgan* v. *Morgan,* 103 Conn. 189, 195, 130 A. 254 (1925); *Starr* v. *Pease,* 8 Conn. 541, 546–47 (1831)." *Joy* v. *Joy,* 178 Conn. 254, 256, 423 A.2d 895 (1979). Although a marital relationship is in its origins contractual, depending as it does upon the consent of the parties, "a contract of marriage is *sui generis.* It is simply introductory to the creation of a *status,* and what that *status* is the law determines." *Gould* v. *Gould,* 78 Conn. 242, 245, 61 A. 604 (1905); *Hames* v. *Hames,* 163 Conn. 588, 592–93, 316 A.2d 379 (1972); *Perlstein* v. *Perlstein,* 152 Conn. 152, 156, 204 A.2d 909 (1964).

In determining the status of a contested marriage, we are bound therefore to examine with care the relevant legislative enactments that determine its validity. Such an examination must be guided by the understanding that some legislative commandments, particularly those affecting the validity of a marriage, are directory rather than mandatory. "The policy of the law is strongly opposed to regarding an attempted marriage . . . entered into in

good faith, believed by one or both of the parties to be legal, and followed by cohabitation, to be void." *Hames* v. *Hames,* supra, 599.

The governing statutes at the time of the purported marriage between these parties contained two kinds of regulations concerning the requirements for a legally valid marriage. One kind of regulation concerned substantive requirements determining those eligible to be married. Thus General Statutes (Rev. 1949) § 7301[1] declared the statutorily defined degrees of consanguinity within which a "marriage shall be void." As this court has indicated in *Hames* v. *Hames,* supra, 598, this substantive condition is not necessarily exclusive; lack of consent to a marriage, for example, would also be a substantive defect, derived from the common law, sufficient to avoid a marriage. For present purposes, it is enough to observe that, on this appeal, no such substantive defect has been alleged or proven. The other kind of regulation concerns the formalities prescribed by the state for the effectuation of a legally valid marriage. These required formalities, in turn, are of two sorts: a marriage license and a solemnization. In *Hames* v. *Hames,* supra, 599, we interpreted our statutes not to make void a marriage consummated after the issuance of a license but deficient for want of due solemnization. Today we examine the statutes in the reverse case, a marriage duly solemnized but deficient for want of a marriage license.

As to licensing, the governing statute in 1955 was a section entitled "Marriage licenses." It provided, in subsection (a): "No persons shall be joined in marriage until both have joined in an application

---

[1] Now General Statutes § 46b-21.

. . . for a license for such marriage." Its only provision for the consequence of noncompliance with the license requirement was contained in subsection (e): ". . . any person who shall join any persons in marriage without having received such [license] shall be fined not more than one hundred dollars." General Statutes (Rev. 1949) § 7302, as amended by § 1280b (1951 Sup.) and by § 2250c (1953 Sup.).[2] Neither this section, nor any other, described as void a marriage celebrated without a license.

As to solemnization, the governing section, entitled "Who may join persons in marriage," provided in 1955: "All judges and justices of the peace may join persons in marriage . . . and all ordained or licensed clergymen belonging to this state or any ·other state so long as they continue in the work of the ministry may join persons in marriage and all marriages attempted to be celebrated by any other person shall be void; but all marriages which shall be solemnized according to the forms and usages of any religious denomination in this state shall be valid." General Statutes (Rev. 1949) § 7306, as amended by § 1281b (1951 Sup.) and by § 2251c (1953 Sup.).[3] Although solemnization is not at issue in the case before us, this language is illuminating since it demonstrates that the legislature has on occasion exercised its power to declare expressly that failure to observe some kinds of formalities, e.g., the celebration of a marriage by a person not authorized by this section to do so, renders a marriage void. We have enforced the plain mandate of this injunction. *State ex rel. Felson* v. *Allen,* 129 Conn. 427, 431, 29 A.2d 306 (1942).

---

[2] Now General Statutes § 46b-24.

[3] Now General Statutes § 46b-22.

In the absence of express language in the governing statute declaring a marriage void for failure to observe a statutory requirement, this court has held in an unbroken line of cases since *Gould* v. *Gould,* 78 Conn. 242, 247, 61 A. 604 (1905), that such a marriage, though imperfect, is dissoluble rather than void. *Hames* v. *Hames,* supra, 598; *Perlstein* v. *Perlstein,* 152 Conn. 152, 157–58, 204 A.2d 909 (1964); *Vendetto* v. *Vendetto,* 115 Conn. 303, 305, 161 A. 392 (1932). We see no reason to import into the language "[n]o persons shall be joined in marriage until [they have applied for] a license," a meaning more drastic than that assigned in *Gould* v. *Gould,* supra, to the statute that then provided that "[n]o man and woman, either of whom is epileptic . . . shall intermarry." Although the state may well have a legitimate interest in the health of those who are about to marry, *Gould* v. *Gould* held that the legislature would not be deemed to have entirely invalidated a marriage contracted in violation of such health requirements unless the statute itself expressly declared the marriage to be void. Then as now, the legislature had chosen to use the language of voidness selectively, applying it to some but not to all of the statutory requirements for the creation of a legal marriage. Now as then, the legislature has the competence to choose to sanction those who solemnize a marriage without a marriage license rather than those who marry without a marriage license. In sum, we conclude that the legislature's failure expressly to characterize as void a marriage properly celebrated without a license means that such a marriage is not invalid.

The plaintiff argues strenuously that our statutes, far from declaring void a marriage solemnized without a license, in fact validate such a marriage when-

ever it has been solemnized by a religious ceremony. The plaintiff calls our attention to the language of § 7306, as amended, that "all marriages . . . solemnized according to the forms and usages of any religious denomination in this state shall be valid." To the extent that this language suggests greater validity for a marriage solemnized by a religious ceremony than for one solemnized by a civil ceremony, it is inconsistent with other provisions of the statutes with regard to solemnization and licensing. It has long been clear that, under our laws, all authority to join parties in matrimony is basically secular. In *Hames* v. *Hames,* supra, 594–95, we recently reaffirmed the holding of *Goshen* v. *Stonington,* 4 Conn. 209, 218–19 (1822), that "[a] clergyman in the administration of marriage, is a public civil officer, and in relation to this subject, is not at all distinguished from a judge . . . or a justice of the peace, in the performance of the same duty." Neither counsel nor this court has been able to discover the legislative history attending the enactment of this puzzling language. Whatever may be its antecedents, for present purposes it is sufficient to note that § 7306 at the very least reenforces our conclusion that the marriage in the case before us is not void.

The conclusion that a ceremonial marriage contracted without a marriage license is not null and void finds support, furthermore, in the decisions in other jurisdictions. See, e.g., *DePotty* v. *DePotty,* 226 Ark. 881, 884, 295 S.W.2d 330 (1956); *Haderaski* v. *Haderaski,* 415 Ill. 118, 120, 112 N.E.2d 714 (1953); *Feehley* v. *Feehley,* 129 Md. 565, 568, 99 A. 663 (1916); *Johnson* v. *Johnson,* 235 S.C. 542, 551–52, 112 S.E.2d 647 (1960); contra, see, e.g., *Edwards* v. *Franke,* 364 P.2d 60, 63 (Alaska 1961);

*Abbott* v. *Abbott,* 282 N.W.2d 561, 566 (Minn. 1979); see also annot., 61 A.L.R.2d 847 (1958). In the majority of states, unless the licensing statute plainly makes an unlicensed marriage invalid, "the cases find the policy favoring valid marriages sufficiently strong to justify upholding the unlicensed ceremony. This seems the correct result. Most such cases arise long after the parties have acted upon the assumption that they are married, and no useful purpose is served by avoiding the long-standing relationship. Compliance with the licensing laws can better be attained by safeguards operating before the license is issued, as by a more careful investigation by the issuing authority or the person marrying the parties." Clark, Domestic Relations, p. 41 (1968).

Since the marriage that the trial court was asked to dissolve was not void, the trial court erred in granting the motion to dismiss for lack of jurisdiction over the subject matter. We need not decide whether the plaintiff's cause of action should have been an action for annulment rather than an action for dissolution. That question should have been raised by a motion to strike; see Practice Book, 1978, § 152; not by a motion to dismiss for lack of subject matter jurisdiction. *Hames* v. *Hames,* supra, 598–99; *Perlstein* v. *Perlstein,* supra, 155. In either case the trial court had subject matter jurisdiction.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion COTTER, C. J., HEALEY and PARSKEY, Js., concurred.

BOGDANSKI, J. (concurring). I concur but would hold that the present marriage is valid and subject to an action for dissolution on the ground that the court had jurisdiction over the parties and the subject matter, i.e., an existing marriage for twenty-five years. Indeed, the domicil of even one of the parties is sufficient to bestow jurisdiction upon the court. *Mazzei* v. *Cantales,* 142 Conn. 173, 112 A.2d 205 (1955). Moreover, recently in *Hames* v. *Hames,* 163 Conn. 588, 596, 316 A.2d 379 (1972), we quoted 1 Swift, Digest, p. 20, with approval, which stated, "[a]ny form of words which explicitly constitute a contract and engagement from the parties to each other, and published in presence of, and by the officer appointed by the Statute, will be a valid marriage."

It is undisputed that the parties were married in the rectory of Our Lady of Mt. Carmel Church in Meriden, on August 25, 1955, according to the rites of the Roman Catholic Church; that they thereafter lived together as husband and wife, raising a family of four children, all of whose birth certificates listed the defendant as their father. There is no statutory enactment in Connecticut which holds that a solemnized marriage is invalid because of the absence of a license. Indeed, General Statutes (Rev. 1949) § 7306 expressly provided that ". . . all marriages which shall be solemnized according to the forms and usages of any religious denomination in this state shall be valid. . . ." To solemnize is "to unite a couple in (marriage) with religious ceremony." Webster, Third New International Dictionary.

Marriage is strongly favored by the law; *Sanders* v. *Sanders,* 52 Ariz. 156, 79 P.2d 523 (1938); *Dunham* v. *Dunham,* 162 Ill. 589, 44 N.E. 841 (1896); *Kelley* v. *Kelley,* 51 R.I. 173, 153 A. 314 (1931);

annot., 74 A.L.R. 138; and existing marriages are presumed to be valid and that presumption has been described by the courts as very strong. *Sy Joc Lieng* v. *Sy Quia*, 228 U.S. 335, 33 S. Ct. 514, 57 L. Ed. 862 (1913); see annots., 77 A.L.R. 729; 34 A.L.R. 464, 470. It is a presumption that grows stronger with the passage of time, is especially strong when the legitimacy of children is involved, and can only be negated by disproving every reasonable possibility that it is valid. *Reed* v. *Reed*, 202 Ga. 508, 43 S.E.2d 539 (1947).